PER CURIAM.
{¶ 1} Defendant-appellant, Bret Adams, appeals the judgment of the Franklin County Court of Common Pleas entered on March 17, 2017, adopting the magistrate's decision on bench trial rendered November 22, 2016, and overruling Adams' objections and supplemented objections to the magistrate's decision. For the following reasons, we affirm the decision of the trial court.
I. FACTS AND PROCEDURAL BACKGROUND
{¶ 2} The record indicates that plaintiff-appellee, Patricia Pappas, and her daughter, Christine Margarum, had approached Adams in 2013 to work with Margarum on a project, the Fashion Meets Music Festival ("FMMF"). Adams was then a practicing attorney with approximately 30 years of experience, with a focus on sports and entertainment law. Adams and Margarum formed FM[2], LLC ("FM[2]"), with Adams as the majority owner and managing member and Margarum as the minority member, to promote FMMF for the 2014 Labor Day weekend. During 2013 and 2014, Pappas provided $549,881 in the form of secured and unsecured loans to help finance FMMF.
*1109 {¶ 3} On November 6, 2014, Pappas filed a one-count complaint against Adams, demanding judgment against him in connection with a March 4, 2014 promissory note Adams had signed, promising to repay Pappas $100,000 plus interest at the rate of 6 percent per annum on or before May 3, 2014. The complaint alleges Adams had defaulted on the obligation, warranting payment of additional interest at the rate of 8 percent per annum, as provided in the promissory note.
{¶ 4} On December 8, 2014, Pappas amended her complaint to add FM[2], LLC d/b/a FMMF as a party-defendant. The amended complaint set forth three counts and requested judgment against Adams and FM[2], jointly and severally, in the amount of $549,881, plus interests, costs, and attorney fees.
{¶ 5} Count 1 alleged breach of contract against FM2 in connection with a $250,000 promissory note and a $100,000 loan fee, for which Pappas sought damages in the amount of $350,000 plus interest. Count 2 alleged breach of contract against Adams on the March 4, 2014 promissory note, for which Pappas sought damages in the amount of $100,000 plus contractual interest of 8 percent per annum. Count 3 alleged Adams and FM[2] were unjustly enriched by additional, unsecured loans Pappas had made to them in the amount of $159,881. Pappas sought damages in the amount of the additional loans plus interest. Count 3 further alleged that Adams had given Pappas a $40,000 check post-dated September 2, 2014, giving full assurance that the check would be good on that date. The complaint alleges that Pappas presented the post-dated check for payment on September 2, 2014, but it was dishonored because Adams had stopped payment on it. Pappas sought damages for $40,000 plus interest.
{¶ 6} On February 23, 2015, Adams filed a third-party complaint against Pappas' daughter, Margarum, alleging that she also was a party to the March 4, 2014 promissory note for $100,000 whereby Adams and Margarum agreed to pay Pappas pursuant to the terms of the note on or before May 3, 2014. That action, assigned Franklin C.P. No. 14 CV 011486, alleged that Pappas had failed to name Margarum as a party-defendant in her action against Adams and FM[2], but that Margarum was personally, jointly and/or severally liable for certain damages alleged by Pappas. Adams voluntarily dismissed his third-party complaint against Margarum pursuant to Civ.R. 41(A), without prejudice, on May 1, 2015.
{¶ 7} On June 3, 2015, Pappas filed a motion for partial summary judgment on Count 1 against FM2 for a $250,000 promissory note dated July 1, 2013 and a $100,000 loan fee. On October 19, 2015, the trial court granted Pappas' motion and entered judgment against FM2 in the amount of $350,000 plus statutory interest from the date of judgment.
{¶ 8} On December 2, 2015, a bench trial was held before a magistrate on the remaining causes of action as set forth under Counts 2 and 3 of the amended complaint. The record indicates the trial was not recorded electronically, but was recorded by a court stenographer who subsequently filed a transcript of the proceedings with the trial court. The parties filed post-trial briefs on December 23, 2015. However, the record further indicates that magistrate retired before filing a written decision and that, pursuant to Civ.R. 53 and Loc.R. 99.02 of the Franklin County Court of Common Pleas, General Division, the case was referred to another magistrate for a second bench trial.
{¶ 9} On August 25, 2015, a retrial of the bench trial was conducted by the second *1110 magistrate. Adams was the only witness called to testify at the retrial.
{¶ 10} Following the retrial, the parties submitted proposed findings of fact and conclusions of law as ordered by the magistrate. On November 22, 2016, the magistrate issued a 20-page decision on bench trial, which included detailed findings of fact and conclusions of law. In her findings of fact, the magistrate stated as follows:
This Magistrate's Findings of Facts are based on the testimony of the sole witness, Bret Adams, and the exhibits introduced into evidence. This Magistrate reviewed all the exhibits and considered each as to its weight and credibility. The credibility of the witness was considered. The credibility of a witness is based upon the appearance of the witness upon the stand; his/her manner of testifying; the reasonableness of the testimony; the opportunity he/she had to see, hear and know the things concerning which he/she testified; his/her accuracy of memory; frankness (or lack of it); intelligence, interest and bias (if any); together with all the facts and circumstances surrounding the testimony.
Of importance in deciding the Findings of Facts, this Magistrate notes that she is free to believe all, some, or none of the testimony of each witness appearing before her. State v. Ellis , 8th Dist., Cuyahoga No. 98538, 2013-Ohio-1184 [2013 WL 1279850]. It should be noted that for purposes of the Findings of Facts, this Magistrate found Adams to be evasive and lacking credibility at times during his testimony.
(Nov. 22, 2016 Mag.'s Decision at 3.)
{¶ 11} The magistrate found as not credible Adams' testimony regarding the March 4, 2014 promissory note for $100,000 that Adams had drafted and signed at Pappas' request. The magistrate stated:
7. In a check dated February 4, 2014 from Plaintiff payable to FM[2], Plaintiff loaned Adams and Margarum $50,000.00 for the Festival. Exhibit 3. At Plaintiff's request, Adams drafted the March 4, 2014 promissory note for $100,000 ("Note"). Adams testified that he did not sign the Note to be personally responsible. Adams' testimony to this effect lacks credibility, especially taking into consideration Adams' extensive legal career with an emphasis in contract law. This Magistrate notes that, in stark contrast to the prior promissory note drafted by Adams and executed on July 1, 2013, FM2 is listed nowhere on the Note, the Note states "the undersigned BRET ADAMS and CHRISTINE MARGARUM promise to pay", and the Note is signed by Adams and Margarum personally without any reference to FM[2]. The Note provides an interest rate of 6% per annum and was due on May 3, 2014. In the event of default, the Note provided an 8% interest rate per annum. Exhibit 7. In a check dated March 11, 2014 from Plaintiff to FM[2], Plaintiff loaned Adams and Margarum $60,000.00 for the Festival. Exhibit 3. This Magistrate finds that the checks in Exhibit 3 constitute consideration for the Note. Adams testified that both checks in Exhibit 3 were received by FM[2], were used for the Festival, and FM2 benefitted from the payments. He further testified that none of the money leant by Plaintiff as evidenced by Exhibits 3 and 7 was repaid to Plaintiff.
(Mag.'s Decision at 4-5.)
{¶ 12} The magistrate next discussed the additional, unsecured loans totaling $189,000 that Pappas had made, as appeared in Exhibit 4. The magistrate considered Adams' testimony that all of those loans were received by FM[2], were used for FMMF that FM2 benefitted from the payments, *1111 and that none of this $189,000 was repaid to Pappas.
{¶ 13} The magistrate found that Adams' had withdrawn $323,882 from FM2 for his personal use. The magistrate's decision lists ten monthly withdrawals totaling $323,882 that Adams had made for himself in 2014. The magistrate's decision states:
Adams could not definitively recall why he made these payments to himself, however the totals were well above his agreed upon monthly salary of $10,000.00. At one point he indicated that some of these payments could have gone toward artist payments for the Festival. At another point he testified that he had personally invested over $1.4 million by selling $1 million of personal assets and receiving personal loans from individuals and these withdrawals were to pay himself back for his personal investment. This Magistrate notes that Adams testimony in this regard[ ] lacks credibility in that (1) he indicated there was absolutely no documentation of such a large investment and/or loans from others; (2) despite very specific notations of other payments in the Check Detail, these substantial withdrawals noted above gave no notation other than "Bret Adams"; and (3) this testimony is contrary to his prior testimony that he did not want to take any risk in his career by investing in FM[2]. As such, this Magistrate finds that in 2014, Defendant Adams withdrew $323,882 from FM2 for his personal use.
(Mag.'s Decision at 6.)
{¶ 14} The magistrate also made a finding in regards to the post-dated (September 2, 2014) $40,000 check Adams had given Pappas, and which was returned after Pappas presented it because Adams had placed a stop payment order on the check. The magistrate found Adams' testimony that he had informed Pappas of the stop payment "unbelievable." (Mag.'s Decision at 6.)
{¶ 15} The magistrate's decision also sets forth specific findings supporting Pappas' claim that Adams had transferred FM[2] assets to another entity Adams had created, MSD Productions, LLC ("MSD"), specifically:
11. FM[2] was approximately $750,000.00 "in the hole" prior to the 2014 Festival. Exhibit 11 shows the extremeness of FM2' insolvency in August 2015. In October of 2015, Adams unilaterally dissolved FM[2] internally. FM[2] was dissolved corporately, but not officially with the Secretary of State. As of his testimony, FM2 still had over $400,000.00 in liabilities and no creditors were given formal notice of the dissolving of FM[2].
12. On November 9, 2015, Adams formed MSD productions, LLC ("MSD") to run the Fashion Meets Music Festival. Adams testified that FM2 had no assets at that time and, therefore, no assets of FM[2] were transferred to MSD. However, Adams testified that FM2 had previously obtained an agreement from a California company to use the terms "Fashion Meets Music" because the California company owned the rights to the name "Fashion Meets Music". MSD continued to use those terms for its music festival. Adams also testified that MSD continued to use FM2's website domain name, www.fmmf.us.
13. Adams testified that FM2 received a grant from the City of Columbus for $25,000.00 ("Grant") which was to be used for 2015. Adams solely obtained the Grant in that Margarum was not involved. FM2 received the check December 21, 2015. FM2 was "dissolved" when Adams signed for the Grant and received the $25,000.00. Adams testified that he believed the check was deposited into FM2's account, but he was not sure.
*1112 14. On February 16, 2016, FM2 received a $69,000.00 check from Anheuser Busch as part of a sponsorship deal for the 2015 Festival. Adams initially testified that the Anheuser Busch check was not deposited into FM2's account. However, when Adams was shown FM2's bank statement from February 2016, he changed his testimony and stated that the Anheuser Busch check was deposited in FM2's account. Adams denied that the $69,000.00 was transferred from FM[2] to MSD. He testified that those funds were pledged to an attorney in Athens, Ohio, Chris Garrick ("Garrick"), as a creditor and went directly to Garrick. He testified that funds ultimately went from FM[2] to Adams as a loan from Garrick when Garrick released the pledge. However, upon being shown bank records, Adams admitted the $69,000.00 went immediately to MSD. On cross examination by his attorney, Adams then stated that the $69,000.00 went to Adams because it was assigned to Garrick as a creditor and Garrick released the funds to Adams. This Magistrate finds that Adams' testimony with regards to the explanation of FM2's $69,000.00 being transferred to MSD was not credible.
15. This Magistrate finds that the following FM[2] assets were transferred by Adams to MSD: (1) FM2's website domain name; (2) use of the terms "Fashion Meets Music; and (3) the $69,000.00 from Anheuser Busch.
(Mag.'s Decision at 6-8.)
{¶ 16} In reaching her conclusions of law in her decision, the magistrate first addressed Count 2 of the amended complaint, Pappas' breach of contract claim against Adams regarding the March 4, 2014 promissory note for $100,000. The magistrate was not persuaded by Adams' arguments that the promissory note was void (1) for lack of consideration, or (2) because he signed the note on the condition and with the understanding that both Margarum and he were to be co-obligors under the note. Based on the evidence adduced at trial, the magistrate concluded that Pappas had met her burden in establishing the promissory note as a valid contract, and that she was entitled to judgment on her breach of contract claim against Adams for the note:
This Magistrate finds that there was an offer by Plaintiff and acceptance by Adams, contractual capacity, legality of object and of consideration, and manifestation of mutual assent. The Note sufficiently stated all of the terms of the contract. Plaintiff completely performed under the contract when she paid $50,000.00 on February 4, 2014 and $60,000.00 on March 11, 2014 to FM[2]. Adams' failure to pay any money whatsoever to Plaintiff under the Note was a material breach of the Note. Finally, Plaintiff has suffered damages by not being repaid the $100,000.00 due on or before May 3, 2014 under the Note.
Accordingly, Plaintiff is entitled to damages of $100,000.00 plus the contractual interest rate of 8% per annum since May 4, 2014 against Defendant Bret Adams on Count 2.
(Mag.'s Decision at 11.)
{¶ 17} The magistrate addressed Pappas' unjust enrichment claim against FM[2], as set forth in Count 3 of the amended complaint. The magistrate discussed the case law on this topic, writing in part as follows:
Unjust enrichment occurs where "a person has and retains money or benefits which in justice and equity belong to another." Smith v. Vaughn (2007), 174 Ohio App.3d 473 [2007-Ohio-7061, 882 N.E.2d 941], quoting Johnson v. Microsoft Corp. (2005), 106 Ohio St.3d 278 [2005 Ohio-4985, 834 N.E.2d 791]. The purpose of an unjust enrichment claim is *1113 to enable the plaintiff to recover the benefit he has conferred on the defendant under circumstances in which it would be unjust to allow the defendant to retain it. Johnson, supra at ¶ 21, citing Hughes v. Oberholtzer (1954), 162 Ohio St. 330, 335 [123 N.E.2d 393]. Restitution is the remedy provided upon proof of unjust enrichment "to prevent one from retaining property to which he is not justly entitled." Keco Industries, Inc. v. Cincinnati Suburban Bell Tel. Co. (1957), 166 Ohio St. 254, 256 [141 N.E.2d 465] ; Santos v. Ohio Bur. of Workers' Comp. (2004), [101] Ohio St.3d 74 [2004-Ohio-28, 801 N.E.2d 441].
In order to prevail on a claim for unjust enrichment, a plaintiff must demonstrate by a preponderance of the evidence that: (1) the plaintiff conferred a benefit upon the defendant, (2) the defendant had knowledge of the benefit; and (3) the defendant retained the benefit under circumstances in which it would be unjust for him or her to retain that benefit. Hambleton v. R.G. Barry Corp. (1984), 12 Ohio St.3d 179, 183 [465 N.E.2d 1298].
(Mag.'s Decision at 11-12.)
{¶ 18} The magistrate concluded that Pappas had met her burden to prevail on her unjust enrichment claim against FM[2]. Pappas had conferred a benefit of $199,881 on FM2 in the form of five unsecured loans between March 11 and August 27, 2014. The evidence adduced at trial demonstrated that Pappas had loaned FM2 this money to fund FMMF. All the funds were received by FM[2], which benefitted from them. The evidence also showed FM2 had knowledge of the loans through Adams, its managing partner. Finally, FM2 has not repaid Pappas the $199,881. The magistrate concluded:
This substantial detriment to Plaintiff is clearly causally connected to the substantial benefit conferred on Defendant FM[2] as funding for the Festival. Principles of equity and justice confirm that it would be unjust from FM[2] to knowingly retain the benefit of the $199,881.00 loans without being required to repay Plaintiff for the entirety of the loans.
Accordingly, Plaintiff is entitled to restitution in the amount of $199,881.00 against Defendant FM[2].
(Mag.'s Decision at 12-13.)
{¶ 19} Finally, the magistrate addressed Pappas' unjust enrichment claim for $199,881 against Adams personally as set forth in Count 3 of the amended complaint. The magistrate considered Adams' arguments that (1) Pappas failed to properly plead a claim to pierce the corporate veil, and (2) Pappas failed to meet her burden to justify piercing the corporate veil.
{¶ 20} The magistrate's decision sets forth this Court's standard for determining if a party properly pled a claim to pierce the corporate veil:
Under the Ohio Rules of Civil Procedure, a complaint need only give the defendant fair notice of a desired claim and an opportunity to respond. RCO Int'l Corp. v. Clevenger (2008 10th Dist.), 180 Ohio App.3d 211 [2008-Ohio-6823, 904 N.E.2d 941], ¶ 11. "Piercing the corporate veil is not a claim, it is a remedy encompassed within a claim. It is a doctrine wherein liability for an underlying tort may be imposed upon a particular individual." Id. citing Geier v. Natl. GG Industries, Inc. (1999 11th Dist.), Lake App. No. 98-L-172, [1999 WL 1313640] 1999 Ohio App. LEXIS 6263.
(Mag.'s Decision at 13.)
{¶ 21} The magistrate's decision acknowledged the weight this Court affords to the Geier court's reasoning and noted the following principles adopted by the Geier court:
*1114 * * * the complaint, and other relief-saving pleadings need not state with precision all elements that give rise to a legal basis for recovery as long as fair notice of the nature of the action is provided. However, the complaint must contain either direct allegations on every material point necessary to sustain a recovery on any legal theory, even though it may not be the theory suggested or intended by the pleader, or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial. Geir [sic] at ¶ 15.
(Mag.'s Decision at 14.)
{¶ 22} The magistrate's decision continued:
To apply the controlling standards to determine if Count 3 of Plaintiff's complaint contained sufficient information to proceed under the doctrine of piercing the corporate veil, this Magistrate must decide if the complaint contains, at a minimum, allegations from which an inference may fairly be drawn that evidence on these material points will be introduced at trial.
"The general rule is that corporations are distinct legal entities, and, thus, shareholders, officers and directors are not normally liable for debts of the corporation." RC [sic], supra at ¶ 9, citing Belvedere Condominium Unit Owners' Assn. v. R.E. Roarck [Roark] Cos. Inc. (1993), 67 Ohio St.3d 274, 287 [617 N.E.2d 1075]. In RCO , the 10th District set forth the Supreme Court of Ohio's 3-prong test for courts to use when deciding whether to pierce the corporate veil. In order to pierce the corporate veil and impose personal liability upon shareholders, it must be shown that:
(1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own;
(2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity; and
(3) injury or unjust loss resulted to the plaintiff from such control or wrong. RCO, supra . At [sic] ¶ 9.
(Mag.'s Decision at 14-15.) The magistrate discussed the subsequent holding of the Supreme Court of Ohio in Dombroski v. Wellpoint, Inc. , 119 Ohio St.3d 506, 895 N.E.2d 538 (2008), which rejected expanding the second prong of the test to include "other unjust or inequitable acts," and thus limited the second prong to fraud or illegal acts.
{¶ 23} The magistrate determined that Count 3 of Pappas' amended complaint failed to make any allegations of acts committed by Adams which amounted to committing "fraud or an illegal act" against her. (Mag.'s Decision at 15.) Consequently, the magistrate found that Pappas had failed to properly plead her unjust enrichment claim to pierce the corporate veil.
{¶ 24} The magistrate further found, however, that although Pappas had not been granted leave expressly to amend the pleadings, the magistrate had permitted her to introduce evidence throughout the trial "on the issue over the repeated objections by Defendants." (Mag.'s Decision at 16.) The magistrate discussed this Court's holding in Gioffre v. Simakis , 72 Ohio App. 3d 424, 594 N.E.2d 1013 (10th Dist.1991), that in cases such as the instant case, "where an issue was not tried by the express or implied consent of the parties, Civil Rule 15(B) provides that the trial court may allow an amendment to the pleadings even when not expressly requested by the party." (Mag.'s Decision at *1115 16-17.) The magistrate found that allowing Pappas to introduce evidence relevant to piercing the corporate veil pursuant to Count 3 did not prejudice either Adams of FM2 because they had ample notice of Pappas' intentions, as both her final pretrial statement and trial brief explicitly stated that she would be seeking to hold Adams personally liable for $199,811 in loans to FM2 under the theory of piercing the corporate veil. The magistrate found "[e]ven more compelling" the fact "that this very issue was fully litigated in the first trial * * * on December 2, 2015," and that the post-trial briefs both sides filed after the first trial evidenced that the piercing the corporate veil issue was "vigorously litigated." (Mag.'s Decision at 17.)
{¶ 25} The magistrate determined that the pleadings had been amended by the trial court pursuant to Civ.R. 15(B) to allow Pappas "to seek personal liability against Defendant Adams with regards to her claim of unjust enrichment." (Mag.'s Decision at 17.) Additionally, the magistrate concluded that Pappas had met her burden of proving that FM2's corporate veil should be pierced. Accordingly, the magistrate found that Pappas was entitled to restitution in the amount of $199,881 against Adams personally.
{¶ 26} On December 6, 2016, Adams filed an objection to the magistrate's decision, arguing that the magistrate's conclusions of law were not supported by the evidence Pappas had offered at the bench trial, and that Pappas had "wholly failed to satisfy her burden of proof and the award is against the manifest weight of the evidence." (Dec. 6, 2016 Def.'s Objs. To Mag. Decision at 1.) On February 21, 2017, Adams filed a supplemental objection with the trial transcript, renewing his previously filed objection.
{¶ 27} On March 17, 2017, the trial court issued a decision and entry adopting the magistrate's decision on bench trial rendered November 22, 2016 and decision and entry overruling defendant Bret Adams' objections and supplemented objections. With respect to Adams' objections/supplemental objections, the trial court stated in its decision:
When reviewing objections to a magistrate's decision, the Court is required to undertake the equivalent of a de novo review determination, and independently assess the facts and conclusions contained in the report of that magistrate. DeSantis v. Soller (1990), 70 Ohio App. 3d 226, 232, 590 N.E.2d 886 (citing Normandy Place Assoc. v. Beyer (1982), 2 Ohio St. 3d 102, 443 N.E.2d 161 ); Randall v. Eclextions Lofts Condo Assn. , 10th Dist. No. 13AP-708, 2014-Ohio-1847 [2014 WL 1777995], ¶ 7. The Court has reviewed the Decision of Magistrate [ ], the written briefs/memoranda submitted by the parties (including the respective Proposed Findings of Fact and Conclusions of Law), the transcript of the bench trial presided over by Magistrate [ ] which was filed on February 10, 2017, all evidence properly before the Court and the applicable law. After review of said materials, the Court does not find the objections/supplemental objections of Defendant Adams well taken. Rather, the Court finds that Magistrate [ ] considered all facts relevant to the matter before her and that she made the appropriate factual findings; that she properly construed and applied the applicable law; and that Defendant Adams has not presented any basis for this Court to sustain his objections and vacate or otherwise modify the Magistrate's Decision.
(Emphasis sic.) (Mar. 17, 2017 Decision at 3.)
{¶ 28} Adams timely appeals the trial court's judgment.
*1116 II. ASSIGNMENTS OF ERROR
{¶ 29} Adams presents for our review two assignments of error:
[1.] The trial court erred and/or abused its discretion by upholding the Magistrate's Decision which found that Plaintiff is entitled to judgment against Defendant Bret Adams, individually, for $100,000 plus contractual interest rate of 8% per annum since May 4.
[2.] The trial court erred and/or abused its discretion by upholding the Magistrate's finding that Plaintiff is entitled to judgment against Defendant Bret Adams, individually, in the amount of $199,881 as the same is wholly unsupported by law and contrary to the evidence and testimony elicited at trial, pursuant to the doctrine of piercing the corporate veil.
{¶ 30} The arguments Adams presents in support of his two assignments of error are the same, in all material respects, as the objection and supplemental objection to the magistrate's decision he filed with the trial court, and which the trial court considered and overruled in its decision.
III. LAW AND DISCUSSION
{¶ 31} When objections are filed to a magistrate's decision, the trial court must undertake an independent, de novo review of the matters objected to in order to "ascertain [whether] the magistrate has properly determined the factual issues and appropriately applied the law." Civ.R. 53(D)(4)(d). See also James v. My Cute Car, LLC , 10th Dist. No. 16AP-603, 2017-Ohio-1291, 2017 WL 1283502, ¶ 13. The appellate standard for reviewing a trial court's adoption of a magistrate's decision varies with the nature of the issues that were (1) preserved for review through objections raised before the trial court and (2) raised on appeal by assignment of error. Feathers v. Ohio Dept. Rehab. & Corr. , 10th Dist. No. 16AP-588, 2017-Ohio-8179, 2017 WL 4548323, ¶ 10. Generally, however, " 'the appellate standard of review when reviewing a trial court's adoption of a magistrate's decision is an abuse of discretion.' " Gilson v. Am. Inst. of Alternative Medicine , 2016-Ohio-1324, 62 N.E.3d 754, ¶ 77, quoting Mayle v. Ohio Dept. of Rehab. & Corr. , 10th Dist. No. 09AP-541, 2010-Ohio-2774, 2010 WL 2433119, ¶ 15. "Therefore, we will only reverse a trial court's adoption of a magistrate's report if the trial court acted in an unreasonable or arbitrary manner." Gilson at ¶ 77. Based on the nature of the issues considered by the trial court, there is no basis to review the trial court's decision by any other standard than abuse of discretion.
{¶ 32} This Court has conducted an independent review of the magistrate's decision, the transcript of the August 25, 2016 bench trial, all evidence properly before the Court, the written briefs submitted by the parties, and the applicable law. On review, this Court does not find Adams' objections well taken. This Court agrees with the trial court's finding that the magistrate considered all facts relevant to the matter before her and made the appropriate factual findings, and properly construed and applied the applicable law. We do not find that the trial court abused its discretion in adopting the magistrate's decision.
A. First Assignment of Error
{¶ 33} Adams asserts in his first assignment of error that the magistrate's decision finding him liable to Pappas on the $100,000 promissory note is contrary to the manifest weight of the evidence. An appellate court will not reverse a judgment as being against the manifest weight of the evidence if some competent, credible evidence supports all the essential elements of the case.
*1117 Coffman v. Mansfield Corr. Inst. , 10th Dist. No. 09AP-447, 2009-Ohio-5859, 2009 WL 3681654, ¶ 10.
{¶ 34} In his brief, Adams states that no evidence and/or testimony was placed before the magistrate and/or the trial court that established that he ever received his bargained-for legal benefit; that is, no evidence was submitted that he personally received the $100,000 listed in the March 4, 2014 promissory note. He points to the magistrate's acknowledgement that "[t]he evidence is undisputed that any and all checks from Plaintiff were made payable to FM[2] or FMMF, not to Adams personally." (Adams' Brief at 5.)
{¶ 35} Adams also argues that the two payments the magistrate concluded constituted consideration for the $100,000 promissory note exceed that amount by $10,000. He asserts that, "[s]urely, [Pappas] would not have issued checks more than the secured obligation by $10,000 after 'requiring' a Promissory Note from Mr. Adams and Christine Margarum." (Adams' Brief at 8.)
{¶ 36} Adams submits that the trial court was unreasonable in adopting the magistrate's decision because the magistrate erred in finding that the two payments from Pappas consisting of $50,000 and $60,000, respectively, were consideration for the March 4, 2014 promissory note, and also that Adams was personally liable for the note. He argues the magistrate's decision was not in accordance with the evidence and/or testimony submitted by Pappas in support of her cause of action against him for breach of contract. He further argues that Pappas failed to causally link the two payments to the March 4, 2014 promissory note, and that no evidence or testimony supports an award of damages against him individually. He asks this Court to find "that the trial court abused its discretion by upholding the Magistrate's Decision because it is against the manifest weight of the evidence and is not supported in fact or law." (Adams' Brief at 9.)
{¶ 37} This Court disagrees with Adams' assessment of the evidence adduced at trial. The magistrate in her decision thoroughly and carefully examined all the evidence presented, including the credibility of the sole witness, Adams. She fully set forth her reasons for dismissing for lack of merit Adams' arguments that the promissory note was void. The magistrate recited with detail the evidence adduced at trial that demonstrated that Pappas had met her burden in establishing the promissory note as a valid contract, and that Pappas was entitled to judgment on her breach of contract claim against Adams for the note.
{¶ 38} The magistrate compared and contrasted the March 4, 2014 promissory note to the prior promissory note drafted by Adams and executed on July 1, 2013. Unlike the July 1, 2013 note, FM2 is not listed anywhere on the March 4, 2014 note. The March 4, 2014 note contains this language: "the undersigned BRET ADAMS and CHRISTINE MARGARUM promise to pay," and it is signed by Adams and Margarum personally, without any reference to FM[2]. (Dec. 8, 2014 Am. Compl. at Ex. B.) As the magistrate accurately noted, the March 4, 2014 note provided an interest rate of 6 percent per annum and was due on May 3, 2014; in the event of default, it provided an 8 percent interest rate per annum. The magistrate found that the $50,000 check and the $60,000 together constituted consideration for the March 4, 2014 note. The magistrate also noted that $10,000 of the total $110,000 was not covered by the March 4, 2014 promissory note; payment of that $10,000 was included in the demand of $199,881 for unsecured loans. The magistrate relied on Adams' testimony that both checks were received by FM[2], were used for FMMF, that FM2 benefitted from the payments, *1118 and that none of the money leant by Pappas via those two checks was repaid to Pappas.
{¶ 39} Based on our review of the record, we agree with the trial court that the magistrate correctly found that there was an offer by Pappas and acceptance by Adams, contractual capacity, legality of object and of consideration, and manifestation of mutual assent. The promissory note sufficiently stated all of the terms of the contract. Pappas completely performed under the contract when she paid $50,000 on February 4, 2014 and $60,000 on March 11, 2014 to FM[2]. Adams' failure to pay any money whatsoever to Pappas under the promissory note was a material breach of the note. Finally, Pappas has suffered damages by not being repaid the $100,000 due on or before May 3, 2014 according to the terms of the note. This Court finds that the trial court did not abuse its discretion in adopting the magistrate's decision that Pappas is entitled to damages of $100,000 plus the contractual interest rate of 8 percent per annum since May 4, 2014 against Adams on Count 2 of the amended complaint.
{¶ 40} Accordingly, we overrule Adams' first assignment of error.
B. Second Assignment of Error
{¶ 41} In his second assignment of error, Adams argues the trial court erred and/or abused its discretion by adopting that portion of the magistrate's decision finding that Pappas is entitled to judgment against Adams, individually, in the amount of $199,881 because the finding is wholly unsupported by law and contrary to the evidence and testimony elicited at trial, pursuant to the doctrine of piercing the corporate veil.
{¶ 42} This Court disagrees. The magistrate's decision contains a thorough and accurate discussion of the relevant law on this topic. Applying that law to the facts of the instant case, the magistrate made the initial determination that Count 3 of Pappas' amended complaint failed to make any allegations of acts by Adams which amount to committing "fraud or an illegal act" against her. (Mag.'s Decision at 15.) The magistrate concluded that Adams' act of providing Pappas a post-dated check and then stopping payment of the check before the date on the check did not rise to the level of fraud, an illegal act, or a similarly unlawful act. Consequently, the magistrate found that Pappas had failed to properly plead her unjust enrichment claim to pierce the corporate veil.
{¶ 43} The magistrate did not leave the issue there, however, but proceeded to discuss the principle that would allow amendment of the pleadings to allow piercing of the corporate veil against Adams. Writing that "[t]he Civil Rules contemplate that an action should be tried on its merits," the magistrate turned to Civ.R. 15(B), which provides for amendment of the pleadings to conform to the evidence. (Mag.'s Decision at 16.)
{¶ 44} The magistrate acknowledged that, although Pappas had not specifically moved to amend the pleadings to pierce the corporate veil as to Count 3 and so had not expressly been granted leave to amend the pleadings, the magistrate had permitted her to introduce evidence throughout the trial "on the issue over the repeated objections by Defendants." (Mag.'s Decision at 16.) The magistrate discussed this Court's holding in Gioffre , that in cases such as the instant case, "where an issue was not tried by the express or implied consent of the parties, Civil Rule 15(B) provides that the trial court may allow an amendment to the pleadings even when not expressly requested by the party." (Mag.'s Decision at 16.) The magistrate found that allowing Pappas to introduce evidence relevant to piercing the corporate *1119 veil under Count 3 did not prejudice either Adams or FM2 because they had ample notice of Pappas' intentions, as both her final pretrial statement and trial brief explicitly stated that she would be seeking to hold Adams personally liable for $199,811 in loans to FM2 under the theory of piercing the corporate veil. The magistrate found "[e]ven more compelling" the fact "that this very issue was fully litigated in the first trial * * * on December 2, 2015," and that the post-trial briefs both sides filed after the first trial evidenced that the piercing the corporate veil issue was "vigorously litigated." (Mag.'s Decision at 17.)
{¶ 45} Consequently, the magistrate found that the pleadings had been amended by the trial court pursuant to Civ.R. 15(B) to allow Pappas "to seek personal liability against Defendant Adams with regards to her claim of unjust enrichment." (Mag.'s Decision at 17.)
{¶ 46} The magistrate in her decision set out the piercing the corporate veil analysis, noting at the outset that "[o]ne of the purposes for incorporation is to limit the liability of shareholders," citing Section 3, Article XIII of the Ohio Constitution, and that "[t]he party seeking to have the corporate form disregarded bears the burden of proof." (Mag.'s Decision at 17., citing State, ex rel. v. Standard Oil. Co. , 49 Ohio St. 137, 177, 30 N.E. 279 (1892).)
{¶ 47} Observing that "Ohio courts have recognized that there is no precise test to determine whether the elements required to pierce the corporate veil have been satisfied, and each case should be regarded as sui generis and decided on its own facts." (Emphasis sic.) (Mag.'s Decision at 18.) The magistrate proceeded to examine the facts of the instant case, as follows:
As to the first prong of the [ Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos. , 67 Ohio St.3d 274, 617 N.E.2d 1075 (1993) ] test, courts look at the following nonexclusive list of factors to determine whether an individual's complete control over the corporation warrants treating the corporation as the individual's alter ego: (1) whether the corporate formalities were observed; (2) whether corporate records were kept; (3) whether corporate funds were commingled with personal funds; and (4) whether corporate property was used for a personal purpose. My Father's House No. 1 v. McCardle , 3rd District No. 9-11-35, 2013-Ohio-420 [986 N.E.2d 1081]. To succeed, "a plaintiff must show that the individual and the corporation are fundamentally indistinguishable." State ex rel. DeWine v. S & R Recycling, Inc. , 195 Ohio App.3d 744 [961 N.E.2d 1153] (2011), quoting Belvedere supra.
Plaintiff presented no evidence concerning the observance of corporate formalities or the keeping of corporate records other than the following: (1) that Adams and Margarum executed an operating agreement and formed FM[2], LLC and (2) that Adams failed to formally dissolve FM2 with the Secretary of State and merely unilaterally dissolved FM[2] internally. However, there was significant evidence that Adams exercised substantial control over FM[2]. The evidence is clear that Adams and Margarum were the sole partners of FM[2], with Defendant Adams having 70% interest in FM[2]. As Managing Partner, Adams directed the overall operations and made the major financial decisions. He had the authority of deciding who was getting paid by FM[2], when they were getting paid, and how much they were going to get paid. Adams used his authority to withdraw $323,882 in 2014 from FM2 for his personal use. Adams also held himself out to be personally liable for the $100,000 note which funds were used for the Festival. In addition, Adams made *1120 the decision to dissolve FM2 in October 2015.
Within one month, on November 9, 2015, Adams created MSD to run the Festival. Although FM2 owned the website domain name www.fmmf.us and the rights to use the name "Fashion Meets Music Festival", Adams unilaterally took both for use by MSD. On February 16, 2016, after FM[2] was dissolved, FM2 received a $69,000 check from Anheuser Busch. As stated previously, this Magistrate found Adams' testimony about the path the $69,000 took and the reasoning for its transfer to completely lack credibility. The evidence was clear that Adams ultimately received the full $69,000 for his personal use. Defendant Adams then gave the $69,000 to MSD. Additionally, while Adams was withdrawing substantial funds from FM2 for personal use, he personally stopped payment on FM2's $40,000 check to Plaintiff.
Finally, Adams' pirating of FM2's website and rights and diverting $392,882 of FM2's money for his personal use resulted in injury and unjust loss to the Plaintiff. His fraudulent and unlawful actions substantially depleted FM2's assets and gave rise to FM2's inability to repay the $199,881 Plaintiff conferred upon FM[2].
Plaintiff met her burden of proving that FM2's corporate veil should be pierced. Accordingly, Plaintiff is entitled to restitution in the amount of $199,881 against Defendant Bret Adams.
(Emphasis sic.) (Mag.'s Decision at 18-20.)
{¶ 48} Based on our review of the record, this Court determines that the magistrate appropriately found that Pappas met her burden under the piercing the corporate veil doctrine. Consequently, this Court finds that the trial court did not abuse its discretion in adopting the magistrate's decision that Pappas was entitled to restitution in the amount of $199,881 from Adams, individually.
{¶ 49} Accordingly, we overrule Adams' second assignment of error.
IV. CONCLUSION
{¶ 50} For the foregoing reasons, this Court overrules Adams' two assignments of error, and affirms the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
TYACK, P.J., LUPER SCHUSTER and BRUNNER, JJ.