[Cite as *Balalovski v. Tanevski*, 2021-Ohio-3990.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Aleksandar S. Balalovski, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 20AP-447 |
| v. | : | (C.P.C. No. 17CV-11123) |
| Dance Tanevski, | : | (REGULAR CALENDAR) |
| Defendant-Appellant, | : | |
| Lence Tanevski, | : | |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on November 9, 2021

**On brief**: *Donnell & Thomas Law*, and *Titus G. Donnell*, for appellant. **Argued**: *Titus G. Donnell*.

APPEAL from the Franklin County Court of Common Pleas

BROWN, J.

{¶ 1} This is an appeal by defendant-appellant, Dance Tanevski (individually "appellant"), from a judgment of the Franklin County Court of Common Pleas overruling his objections to a magistrate's decision and entering judgment in favor of plaintiff-appellee, Aleksandar S. Balalovski, on appellee's claim for breach of contract.

{¶ 2} On December 16, 2017, appellee filed a complaint, naming as defendants Dance Tanevski and Lence Tanevski (collectively "the defendants"), and asserting causes of action for breach of contract and unjust enrichment. The complaint alleged that, in early 2005, the defendants approached appellee about securing a loan to help them with financial

difficulties.  The complaint further alleged that appellee agreed to loan the defendants the sum of $25,000, but that the defendants had failed to repay money owed to him under the loan.

{¶ 3}  By order of reference filed June 10, 2019, the matter was assigned to a magistrate of the trial court who conducted a bench trial on October 7, 2019.  The magistrate subsequently issued a decision which included the following findings of fact and conclusions of law.

{¶ 4}  Appellee and the defendants are "members of the Macedonia community in Central Ohio," having immigrated to the United States from Macedonia "many years ago." The parties "know each other socially," and testimony was presented as to "the closeness of this community, centered around its church, and the help and support that members of the Macedonia community provide to each other."  (Mag. Decision at 3.)

{¶ 5}  Appellee "testified that members of the Macedonia community trust each other," and that they "do business with each other, including loans, without 'papers' or documentation."  Appellee related "he has always been paid back when he has loaned money to other members of the Macedonia community, and this is the first time that someone has refused to repay money that was borrowed."  (Mag. Decision at 3.)

{¶ 6}  According to appellee, appellant "called him on September 2, 2004, and told him that he was in big trouble with the Internal Revenue Service and that his money had been frozen."  Appellant "asked to borrow $2,500.00," and appellee "agreed to help * * * and gave [appellant] $2,500.00 in cash the next day, September 3, 2004."  (Mag. Decision at 3.)  Appellant asked appellee "not to tell his wife, Defendant Lence Tanevski, about the loan," and appellant "promised to re-pay the loan in two (2) weeks."   There was "no discussion" between appellee and appellant "about interest on the loan or when [appellant] had to pay back the money," and "[n]o documents were signed."  (Mag. Decision at 4.)

{¶ 7}  Appellee testified that the $2,500 loan on September 3, 2004 was "the first of four (4) loans, totaling $25,000.00, that he made to [appellant] from 2004 through August of 2005."  At trial, appellee identified "Plaintiff's Exhibit 1, * * * a $2,500.00 cashed check from [appellee's] account made payable to '5/3 Bank' dated September 3, 2004," and "[t]he 'For' memo line of the check has 'Dance' written on it."  Appellee stated "this was the

check he cashed to get the $2,500.00 that he loaned to Dance Tanevski."  (Mag. Decision at 4.)

{¶ 8}  Appellee testified he "loaned [appellant] another $2,500.00 in January of 2005, when [appellant] called him and said that he needed more money because it would be longer than expected before his money was released by the IRS." Appellee "remembered the conversation because it took place the day before Macedonia Christmas."  Appellant again "emphasized in his conversation" that appellee "should not tell [appellant's] wife or children about the loan," and "[t]here was no discussion of interest being charged on the loan." (Mag. Decision at 4.)

{¶ 9}  Appellee identified "Plaintiff's Exhibit 2" as a "cashed check" in the amount of $2,500 from appellee's account "made payable to '5/3 Bank' dated January 6, 2005," and he noted "[t]he 'For' line of the check has 'Dance' written on it."  (Mag. Decision at 4.) Appellee stated "this was the check he cashed to get the second $2,500.00 that he loaned to Dance Tanevski."  (Mag. Decision at 4-5.)

{¶ 10}  Appellee testified appellant "called him in April of 2005 and told him that he needed $15,000.00 as soon as possible," and appellant "promised to repay [appellee] by giving him the retirement money" appellant would receive in "November of 2005." Appellee "agreed to loan [appellant] an additional $15,000.00."   Appellee made the loan to appellant by "giving him $5,000.00 in cash and a Bank One check in the amount of $10,000.00."  According to appellee, appellant "wanted the entire $15,000.00 loan in cash," but appellee "was only willing to loan him $5,000.00 in cash."  Appellant told appellee that "he [appellee] was not the only one who had lent him money," but appellant "promised he would pay him back."  (Mag. Decision at 5.)

{¶ 11}  Appellee provided testimony "as to Plaintiff's Exhibit 3, * * * an April 1 through April 30, 2005 Bank One statement for [appellee's] Home Equity Line of Credit." The statement "shows a balance advance of $15,000.00 on April 14, 2005." Appellee "wrote '10,000 check #197156211, 5000 cash' on the statement to document the loan to Defendant Dance Tanevski."  Appellee identified "Plaintiff's Exhibit 4" as "an April 14, 2005 Bank One check made payable to Dance Tanevski in the amount of $10,000.00."  (Mag. Decision at 5.)

{¶ 12} Appellant "admitted that he received a non-interest-bearing loan of $10,000.00 from [appellee] in April of 2005, and that he cashed the check made payable to him and marked as Plaintiff's Exhibit 4." (Mag. Decision at 5.) Appellant testified, however, "he repaid the $10,000.00 loan in cash." The magistrate "did not find [appellant's] testimony that he repaid the $10,000.00 loan in full in cash to be persuasive or credible." (Mag. Decision at 6.)

{¶ 13} Appellee testified "his last loan to [appellant] was on August 17, 2005, in the amount of $5,000.00." On August 5, 2005, appellant requested a loan, stating to appellee " '[m]y credit is bad.' " Appellant "suggested that the loan come from [appellee's] IRA." Appellee agreed to loan appellant "an additional $5,000.00," but he "did not take the money from his IRA." Instead, appellee "cashed a check representing an advance on his equity home line of credit" with his credit union "and then gave the $5,000.00 in cash to [appellant]." (Mag. Decision at 6.)

{¶ 14} On August 17, 2005, appellee "unilaterally 'consolidated' the money he loaned" to appellant by withdrawing $25,000 from a home equity line of credit. Appellee "testified that it was then his intent to charge [appellant] whatever interest rate the bank charged him on this advance." Appellee "admitted that he did not discuss his consolidation plan with [appellant] and did not discuss this change in 'terms,' i.e. the charging of interest on the loans with [appellant]." (Mag. Decision at 6.)

{¶ 15} Appellee testified as to "Plaintiff's Exhibit 5(A)-(D), which is four pages of 15 copied receipts." Appellee stated he gave appellant "a written receipt every time [appellant] made a payment on his loans," giving appellant "the top, white copy," while appellee "kept the bottom, yellow, 'carbon' copy." (Mag. Decision at 7.)

{¶ 16} Appellee testified that appellant "repaid him $7,250.00 on the loans." The magistrate found that testimony was "supported by" an exhibit attached to appellee's complaint "which notes payments on the loans of $7,250.00 between September 4, 2005 and October 15, 2012, most, but not all, of which are reflected in the receipts comprising Plaintiff's [Exhibit] 5(A)-(D)." (Mag. Decision at 7.) The magistrate therefore found appellee's testimony that appellant repaid him $7,2500 on the loans to be "credible, reliable and persuasive." (Mag. Decision at 8.)

{¶ 17} Appellee stated appellant "stopped making payments in late 2012, but repeatedly told [appellee] that 'I am working on it' or that he would get money from his IRA." Appellant "[e]ventually * * * stopped returning [appellee's] phone calls and messages." According to appellee, appellant "never disputed the amounts/balances written on the receipts given to him." (Mag. Decision at 8.)

{¶ 18} Appellee testified as to "Defendant's Exhibit 5, a June 8, 2015 letter from [appellee] to 'Mr. and Mrs. Tanevski' about collection of the remaining balance of the $25,000.00 in loans." Appellee wrote the letter because "he heard that [appellant] had borrowed money from other people and never repaid them." Appellee also testified as to "Defendant's Exhibit 6, a September 1, 2016 letter from [appellee] to 'Danche.' " In the letter, appellee "referenced a July 2015 conversation with [appellant] about repaying the loan and [appellant's] request for two more months to pay it off. The letter also gives [appellant] 'two more weeks to pay * * * the total balance of $28,772.47 * * * minus 2 suites [sic], one sports coat, and time for alterations.' " (Mag. Decision at 9.)

{¶ 19} Appellant "admitted at trial that he received the June 8, 2015 and September 1, 2016 letters from [appellee] related to the loans * * * but he never responded to them." Appellant "said that the letters were 'laughable,' and he didn't respond because he didn't owe [appellee] any money." (Mag. Decision at 9.)

{¶ 20} Appellee "admitted" that appellant's wife, "Defendant Lence Tanevski[,] knew nothing about the loans that [appellant] took from him." (Mag. Decision at 9.) On cross-examination, appellee "admitted * * * there were no terms in the parties' verbal agreement about interest because [appellant] was to repay the first loan within two weeks," but appellee "began to unilaterally charge [appellant] interest when [appellee] consolidated the loans on August 17, 2006 via a home equity line of credit advance and the bank charged him interest." (Mag. Decision at 10.)

{¶ 21} Appellant testified he provided appellee "with tailoring services and that he used his company's expense account to buy suits at a discount for [appellee] and his son." Appellant "did not offer any testimony as to the amount actually paid for the suits he purchased at cost for [appellee] or the exact number of suits provided." (Mag. Decision at 11.)

{¶ 22} Appellant denied borrowing $2,500 from appellee "on September 3, 2004," and he denied borrowing $2,500 from him "on January 6, 2005." Appellant "admitted that he borrowed $10,000.00 in April of 2005, but denied receiving $5,000.00 in cash at the same time, and denied all other loans." Instead, appellant "testified that he asked [appellee] for $15,000.00 in April of 2005, but [appellee] refused and only gave him the $10,000.00." Appellant "admitted that he asked [appellee] not to tell his wife because he was using the money to help his sick brother in France and didn't want her to know," and he "wanted to keep it a secret." According to appellant, he gave appellee "10,000.00 in cash to repay the loan in June of 2005 at his son's graduation party, and that he did not get a receipt." (Mag. Decision at 12.)

{¶ 23} Despite the claim "he had repaid the loan in full in June of 2005, [appellant] admitted that he gave [appellee] a check for $1,200.00 on November 29, 2011 and a check for $864.00 on February 10, 2012." Appellant's admission "was supported by the receipts found on Plaintiff's Exhibit 5(D) and page 4 of Defendant's Exhibit 4, showing payments by check to [appellee]." Appellant "claimed that he gave [appellee] these checks for more than two thousand dollars ($2,000.00) six (6) years after he repaid the loan in full because [appellee] was threatening him and 'keeping me hostage.' " The magistrate did not find this testimony credible, noting appellant's "own exhibit, Defendant's Exhibit 7, shows that [appellant] made fourteen (14) payments to [appellee] after he allegedly paid back the loan in full in 2005, and that another $500.00 was paid on October 15, 2012, which was after the check for $864.00 on February 10, 2012." (Mag. Decision at 12.)

{¶ 24} In response to an inquiry by the magistrate regarding "where the numbers 1200 and 864 had come from in terms of making payments to [appellee], because they do not appear to be random, even numbers, [appellant] had no explanation for the court and said that he did not know and perhaps that is all he had in his bank account at the time." Appellant testified he "never got a receipt from [appellee] and that every receipt in Plaintiff's Exhibit 5(A)-(D) * * * is 'made up.' " In "so testifying," the magistrate found appellant "ignored his admission that two of the three receipts on the fourth page of the exhibits are correct, both in terms of dates and amounts, as evidenced by the checks he admitted that he wrote to [appellee] on November 29, 2011 and February 10, 2012." (Mag. Decision at 13.)

{¶ 25} Appellant denied having "financial problems" or "problems with the IRS, and he also denied making bets on horses or losing money at the racetrack. He admitted, however, "he has been to the Kentucky Derby and goes to the local race track perhaps a half-dozen times a year." Appellant "admitted that he was the secretary" at a local Macedonian church, but he "denied stealing money from the church." He further admitted entering "into a 2002 confidential settlement agreement with [the church] where he paid the church $13,000.00 because there was money missing related to the church's reception hall." Appellant "denied any wrongdoing, but admitted he was responsible because he was in charge of bookkeeping for the church/reception hall," and he "characterized his obligation to repay the church as the subject of 'bookkeeping errors.' " (Mag. Decision at 13.)

{¶ 26} Appellant admitted that "in 2008 he had an adjustable mortgage that was getting too high," and he "conveyed his house to [P.H.] for $13,000.00 less than he bought if for, with a release of the mortgage, and then rented the house from [P.H.] for $1,500.00 a month." (Mag. Decision at 13-14.) Four years ago, appellant's children "bought the house from [P.H.], and since that time [appellant] and [his wife] have lived in the house for free." The magistrate "did not find Defendant Dance Tanevski to be a credible witness." (Mag. Decision at 14.)

{¶ 27} Appellant's spouse, Lence, "testified that she knew nothing about the money that her husband borrowed from [appellee] until November of 2016, when she was accosted by [appellee's] wife at Kroger." Lence further testified "she never borrowed any money from [appellee] and never received any money from [him]." The magistrate "found Lence Tanevski to be a credible witness." (Mag. Decision at 14.)

{¶ 28} On October 29, 2019, the magistrate issued a decision finding appellee proved his claim for breach of contract against appellant for four oral contracts/loans, and proved entitlement to compensatory damages in the amount of $17,240. The magistrate found appellee did not prove a claim for breach of contract against Lence Tanevski, nor did appellee show entitlement to recovery against the defendants based on a theory of unjust enrichment.

{¶ 29} On February 24, 2020, appellant filed objections to the magistrate's decision. By decision and entry filed August 27, 2020, the trial court overruled appellant's objections and adopted the decision of the magistrate.

{¶ 30} On appeal, appellant sets forth the following two assignments of error for this court's review:

> I. THE TRIAL COURT ERRED BY FAILING TO APPLY THE APPROPRIATE STANDARD OF PROOF FOR ESTABLISHING THE EXISTENCE OF AN ORAL CONTRACT.
>
> II. THE TRIAL COURT ERRED IN FINDING THAT PLAINTIFF-APPELLEE HAD SHOWN THE EXIST[E]NCE OF AN ORAL CONTRACT, AND DAMAGES ARISING THEREFROM, PURSUANT TO THE APPROPRIATE STANDARD OF PROOF.

{¶ 31} Appellant's assignments of error are interrelated and will be considered together. Under these assignments of error, appellant asserts the trial court erred in failing to apply the appropriate standard of proof for establishing the existence of an oral contract, and in finding appellee proved an oral contract and resulting damages.

{¶ 32} Civ.R. 53(D)(4)(d) states in part: "If one or more objections to a magistrate's decision are timely filed, the court shall rule on those objections. In ruling on objections, the court shall undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law."

{¶ 33} In accordance with Civ.R. 53(D)(4)(b), a trial court's review of a magistrate's decision is "de novo." *Mackenbach v. Mackenbach*, 3d Dist. No. 6-11-03, 2012-Ohio-311, ¶ 9, citing *Goldfuss v. Traxler*, 3d Dist. No. 16-08-12, 2008-Ohio-6186, ¶ 7, citing *Stumpff v. Harris*, 2d Dist. No. 21407, 2006-Ohio-4796, ¶ 16. Although "a trial court is required to independently review the record and make its own factual and legal findings, the trial court may rely upon the magistrate's credibility determinations when it reviews the magistrate's decision." *Id.,* citing *Gilleo v. Gilleo*, 3d Dist. No. 10-10-07, 2010-Ohio-5191, ¶ 47, citing *Hendricks v. Hendricks*, 3d Dist. No. 15-08-08, 2008-Ohio-6754, ¶ 25, citing *Osting v. Osting*, 3d Dist. No. 1-03-88, 2004-Ohio-4159. After completing its de novo review, the

court may "adopt, reject, or modify the magistrate's decision." *Id.*, citing *Tewalt v. Peacock*, 3d Dist. No. 17-10-18, 2011-Ohio-1726, ¶ 31.

{¶ 34} In general, " ' "the appellate standard of review when reviewing a trial court's adoption of a magistrate's decision is an abuse of discretion." ' " *Pappas v. FM2, LLC*, 10th Dist. No. 17AP-258, 2017-Ohio-8548, ¶ 31, quoting *Gilson v. Am. Inst. of Alternative Medicine*, 10th Dist. No. 15AP-548, 2016-Ohio-1324, ¶ 77, quoting *Mayle v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 09AP-541, 2010-Ohio-2774, ¶ 15. Further, "a trial court's decision will not be reversed on appeal as being against the manifest weight of the evidence as long as there is some competent, credible evidence to support the decision." *Huntington Natl. Bank v. Findlay Machine & Tool, Inc.*, 3d Dist. No. 5-11-27, 2012-Ohio-748, ¶ 23, citing *Cichanowicz v. Cichanowicz*, 3d Dist. No. 3-08-04, 2008-Ohio-4779, ¶ 20, citing *Duer v. Moonshower*, 3d Dist. No. 15-03-15, 2004-Ohio-4025, ¶ 15.

{¶ 35} Appellant initially contends the trial court erred in failing to sustain his objection to that part of the magistrate's decision rejecting appellant's proposition that the applicable standard of proof in showing the existence of an oral contract is clear and convincing evidence (as opposed to the preponderance of the evidence standard applicable in most civil cases). Appellant argues that, in adopting the magistrate's decision, the trial court specifically declined to apply the clear and convincing standard on the basis that neither the Tenth District nor the Supreme Court of Ohio had yet adopted the clear and convincing standard to establish the existence of an oral contract outside the statute of frauds.

{¶ 36} The record indicates that, following the magistrate's bench trial, appellant submitted proposed findings of fact and conclusions of law, asserting appellee's burden of proof in seeking to enforce an oral contract was by clear and convincing evidence. In support, appellant cited the decision of the Fourth District Court of Appeals in *Bumgarner v. Bumgarner*, 4th Dist. No. 09CA22, 2010-Ohio-1894, ¶ 20 (holding "[t]he burden of proof on one seeking to enforce an oral contract requires that party to prove the existence of the contract by clear and convincing evidence"). In his objections to the magistrate's decision, appellant argued the magistrate erroneously declined to adopt the clear and convincing standard of proof.

{¶ 37} In addressing this objection, the trial court, while noting the magistrate "rejected Defendant's theory * * * on the grounds that neither the Tenth District Court of Appeals nor the Supreme Court of Ohio has adopted the holding from *Bumgarner*[,]" further observed the magistrate's decision "finds that either under a preponderance of the evidence or by clear and convincing evidence, Plaintiff entered into four oral agreements with Defendant Dance Tanevski." (Trial Court's Decision at 2.)

{¶ 38} A review of the magistrate's decision supports the trial court's determination on this issue. Specifically, the trial court cited the following passage from the magistrate's decision: "By the greater weight of the evidence, *indeed by clear and convincing evidence*, the Magistrate finds and concludes that, via language and conduct as well as the exhibits in this case, Plaintiff Aleksander Balalovski entered into four (4) oral contracts with Defendant Dance Tanevski for the loan of $25,000.00." (Emphasis added.) (Mag. Decision at 16.)

{¶ 39} Thus, as noted by the trial court, the magistrate concluded appellee satisfied his burden to prove his claim for breach of contract under either a preponderance or clear and convincing evidence standard. Because the record indicates the magistrate applied the higher clear and convincing standard of proof to the evidence presented, appellant has failed to demonstrate prejudice. Accordingly, the trial court did not abuse its discretion in overruling this objection.

{¶ 40} Appellant further contends the trial court erred in adopting the magistrate's finding that appellee proved the existence of a contract and damages with reasonable certainty. In his objection to the magistrate's decision, appellant argued appellee was unable to articulate the essential terms of the transaction, including the interest rate he was charging and the amount he sought to collect, with required certainty.

{¶ 41} A contract is defined to mean "a promise, or a set of promises, that is actionable upon breach." *Depompei v. Santabarbara,* 8th Dist. No. 101163, 2015-Ohio-18, ¶ 21. In order to succeed on a claim for breach of contract, "a party must prove the existence of a contract, the party's performance under the contract, the opposing party's breach, and resulting damage." *Id.* at ¶ 20. *See also Becker v. Direct Energy, LP*, 2d Dist. No. 27957, 2018-Ohio-4134, ¶ 38, quoting *Doner v. Snapp*, 98 Ohio App.3d 597, 600 (2d Dist.1994) ("The elements of a breach of contract claim are 'the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff.' ").

{¶ 42} Under Ohio law, "[t]he existence and the terms of an oral contract are issues for the trier of fact, and an appellate court will not reverse the trial court's decision when it is supported by some competent, credible evidence." *Depompei* at ¶ 21. Because "[p]roof of the terms of an oral contract rarely exists with the level of formality found in written contracts[,] * * * the terms of an oral contract may be shown from the parties' words, deeds, acts, and silence." *Kodu v. Medarametla,* 1st Dist. No. C-160319, 2016-Ohio-8020, ¶ 9, citing *Kostelnik v. Helper,* 96 Ohio St.3d 1, 2002-Ohio-2985, ¶ 15. Moreover, " '[c]omplete clarity in every term of the agreement is unnecessary because all agreements have some degree of indefiniteness and uncertainty.' " *Depompei* at ¶ 22, quoting *Advantage Renovations, Inc. v. Maui Sands Resort Co. LLC.*, 6th Dist. No. E-11-040, 2012-Ohio-1866, ¶ 18. Instead, "the goal in enforcing oral contracts is to hold people to the promises they make." *Id.* In order to demonstrate that a particular transaction was a loan, "the trial court may consider the relationship of the parties and an individual's need for the loan." *Id.* at ¶ 21.

{¶ 43} With respect to appellant's objection challenging the issue of interest, the trial court noted (and we agree) the magistrate found the agreements of the parties did not include interest to be paid on the amount borrowed and, therefore, the magistrate found appellee was not entitled to pre-judgment interest. The trial court also addressed appellant's contention that appellee was unable to prove the exact amount he sought from appellant with certainty. In support of this objection, appellant cited a portion of the trial transcript in which appellee testified he was seeking "close to $28,000, the principal and interest." (Tr. at 85.) The trial court found "the citation supplied by [appellant] does not show that [appellee] failed to prove the amount owed * * * with certainty," noting that appellant "fails to address the findings of fact wherein the Magistrate recounted the testimony that demonstrated the amount [appellant] agreed to repay but failed to repay." (Trial Court Decision at 3.)

{¶ 44} Appellant's contention the trial court erred in adopting the magistrate's finding that appellee proved the existence of a contract and damages is primarily a manifest weight challenge. Under Ohio law, "[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C.E. Morris Co. v. Foley Constr.*

*Co.*, 54 Ohio St.2d 279, 280 (1978). In general, "damages in a contract action is the sum necessary to place the nonbreaching party in as good a position as he would have been had the contract been fully performed." *Depompei* at ¶ 20.

{¶ 45} Based on the evidence presented, the magistrate in this case found appellee entered into four oral contracts with appellant for a total loan amount of $25,000. Specifically, the magistrate found the parties entered into agreements for loan amounts of $2,500 (on September 3, 2004), $2,500 (on January 6, 2005), $15,000 (on April 14, 2005), and $5,000 (on August 17, 2005), respectively. As noted, the magistrate determined the parties' agreement did not include interest to be paid on the amounts borrowed.

{¶ 46} During the bench trial, appellee testified that appellant approached him in September 2004 stating he was in trouble with the IRS and that his money was "frozen." (Tr. at 16.) Appellee testified that he gave appellant $2,500 in cash the next day. Counsel for appellee submitted, as Exhibit 1, a copy of a check dated September 3, 2004, payable to cash and the notation "for Dance" on the memo line. (Tr. at 20.) Appellant promised to pay him back "within two weeks." Appellee testified that appellant requested another loan in the amount of $2,500, stating it was "going to take a little longer for my money to be released." (Tr. at 22.) Appellee identified as Exhibit 2 a copy of a check, dated January 6, 2o05, payable to cash in the amount of $2,500 in which the notation "For Dance" was again written on the memo line. (Tr. at 24.)

{¶ 47} Appellee related that appellant made a third request for money, telling appellee he was "in big trouble" and that he did not "want to be killed." (Tr. at 25.) Appellee stated he provided appellant $5,000 in cash as well as a check in the amount of $10,000 payable to appellant and dated April 14, 2005. While appellant acknowledged receiving and cashing this check, he claimed to have paid appellee $10,000 in cash during a graduation party, a claim the magistrate deemed not credible. Appellee testified as to a final loan he made to appellant in the amount of $5,000 on August 17, 2005. Appellee also testified that he provided copies of receipts to appellant for amounts appellant paid on the debt, and that appellant never disputed the amount of the balance due.

{¶ 48} Regarding appellant's testimony that he repaid the money he borrowed, the magistrate did not find appellant's testimony "credible or persuasive." While there was some conflicting evidence as to how much appellant repaid, the magistrate found "the

competent, credible, persuasive and convincing evidence at trial established" that appellant repaid appellee "7,250.00 of the $25,000.00 he borrowed."  (Mag. Decision at 16.)  The magistrate found testimony as to the amount repaid "was supported by the December 11, 2017 exhibit attached to Plaintiff's complaint (Defendants' Exhibit 7/B), which notes payments on the loans of $7,250.00 between September 4, 2005 and October 15, 2012, most * * * of which are reflected in the receipts comprising Plaintiff's [Exhibit] 5(A)-(D)." (Mag. Decision at 7.)

{¶ 49}  On review, we find no error by the trial court in adopting the decision of the magistrate finding sufficient evidence that appellee and appellant entered into four oral loan agreements totaling $25,000, and that appellee proved entitlement to compensatory damages in the amount of $17,250.  As noted, appellant's argument is essentially a manifest weight challenge implicating the credibility determinations of the magistrate who, as trier of fact, heard conflicting testimony by appellee and appellant regarding their interactions and found credible the testimony of appellee.  The magistrate further found the supporting documents/exhibits submitted by appellee to be credible, corroborative evidence of the four loan agreements. The evidence before the magistrate included appellant's admission that he cashed a check from appellee in the amount of $10,000 in April 2005.  While appellant claimed he paid this amount back in cash to appellee at a graduation party, the magistrate found his testimony not credible and noted evidence appellant had made 14 payments to appellee years after he purportedly paid the loan in full (in 2005).  Here, the magistrate was tasked with considering the conflicting testimony regarding the amount of the money lent and repaid, and we find no abuse of discretion by the trial court in accepting the findings of the magistrate and in overruling appellant's objection challenging the magistrate's determination appellee had proven his damages with reasonable certainty.

{¶ 50}  Based on the foregoing, appellant's two assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

BEATTY BLUNT and MENTEL, JJ., concur.

_____