[Cite as *Cirotto v. Am. Self Storage of Pickerington*, 2025-Ohio-1670.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Christopher Cirotto, | : | |
| Plaintiff-Appellant, | : | |
| | | No. 24AP-308 |
| v. | : | (C.P.C. No. 22CV-2710) |
| American Self Storage of Pickerington et al., | : | (REGULAR CALENDAR) |
| | : | |
| Defendants-Appellees. | : | |
| | : | |

D E C I S I O N

Rendered on May 8, 2025

**On brief:** *Christopher Cirotto*, pro se. **Argued:** *Christopher Cirotto*

APPEAL from the Franklin County Court of Common Pleas

DORRIAN, J.

{¶ 1} Plaintiff-appellant, Christopher Cirotto, appeals from a judgment of the Franklin County Court of Common Pleas sustaining in part the objection of defendant-appellee, American Self Storage of Pickerington ("Self Storage"), to a magistrate's decision and awarding Cirotto $8,025 in damages. Cirotto also appeals from a judgment granting in part and denying in part Self Storage's Civ.R. 12(B)(6) motion to dismiss the amended complaint. For the reasons that follow, we affirm in part and reverse in part.

I. Facts and Procedural History

{¶ 2} On April 26, 2022, Cirotto filed a pro se complaint against Self Storage and Robert LeVeck, the owner of Self Storage, asserting claims for breach of contract, promissory estoppel, intentional infliction of emotional distress ("IIED"), fraud, and extortion. That same day, Cirotto also filed a motion requesting either a permanent restraining order or the continuation of a temporary restraining order ("TRO") he obtained against Self Storage in the Fairfield County Court of Common Pleas.

{¶ 3} The events giving rise to the complaint stem from Cirotto's rental of storage unit #428 at Self Storage's storage facility in Pickerington, Ohio. Cirotto began renting the storage unit in September 2019. In January and February 2022, Cirotto failed to timely pay his rent for the storage unit.

{¶ 4} Cirotto alleged that when he went to Self Storage to pay his late rent on February 21, 2022, Self Storage's manager, Renee Sigler, informed him Self Storage had "cut [his] lock, [and were] sending all of [his] earthly possessions to auction." (Compl. at ¶ 17.) Cirotto stated he asked Sigler "how this was even possible," because Self Storage's policy provided a tenant had "to be over 90 days late" before Self Storage would take possession of the tenant's property. (Compl. at ¶ 17, 18.) Sigler informed Cirotto Self Storage had sent him two notices regarding the upcoming auction of his property. Cirotto claimed he never received the notices. (Compl. at ¶ 18.) Sigler provided Cirotto with copies of the notices during their February 21, 2022 meeting. (Compl. at ¶ 18-20.) The notices informed Cirotto his unpaid rent and other fees totaled $613, Self Storage had scheduled a "March 5, 2022 auction date to sell" his property, and that he could request a judicial hearing on the matter. (Compl. at ¶ 26; Attachment 5, attached to Apr. 26, 2022 Mot. for Restraining Order.)

{¶ 5} On March 2, 2022, Cirotto filed a complaint against Self Storage and a motion for a TRO in the Fairfield County Court of Common Pleas. (Compl. at ¶ 27.) On March 3, 2022, following an ex parte hearing, the Fairfield County court issued a TRO restraining Self Storage "from selling, auctioning, destroying, or otherwise disposing of any property belonging to Plaintiff Christopher Cirotto" for a period of fourteen days. (Attachment 1, attached to Apr. 26, 2022 Mot. for Restraining Order.)

{¶ 6} Although Cirotto believed Self Storage was located in Fairfield County, the storage facility was located in Franklin County. As such, Self Storage filed a motion in the Fairfield County case to change venue to Franklin County. On March 15, 2022, the Fairfield County court granted the motion for change of venue and ordered the case transferred to Franklin County. However, Cirotto initiated a new action in the Franklin County Court of Common Pleas by filing his April 26, 2022 complaint.

{¶ 7} On April 27, 2022, the trial court denied Cirotto's motion for a permanent injunction or a continuation of the TRO issued by the Fairfield County court. On April 28, 2022, Cirotto filed a motion for a TRO restraining the defendants from selling or otherwise

disposing of his property in the storage unit. The trial court denied Cirotto's motion for a TRO as moot on May 2, 2022. The court noted defendants' counsel had informed the court the items in the storage unit "were sold several weeks ago." (May 2, 2022 Order at 1.)

{¶ 8} On May 3, 2022, Cirotto filed a motion for leave to file an amended complaint. The court granted Cirotto's motion for leave.

{¶ 9} On October 5, 2022, Cirotto filed his amended complaint against the following defendants: Self Storage; Robert LeVeck; Sigler; Jennifer LeVeck, Robert Leveck's wife; American Self Storage of Grove City, LLC, another storage facility owned by Robert LeVeck; LeVeck Commercial Construction & Development, LLC, another company owned by the LeVecks; W. Blair Lewis, Self Storage's attorney; and the Law Offices of W. Blair Lewis, LLC, Attorney Lewis's law office. Cirotto asserted claims for breach of contract, promissory estoppel, IIED, fraud, extortion, and for injunctive relief against all the defendants. Cirotto alleged the defendants "illicit actions resulted in [his] Total Loss of All of [his] precious possessions" contained in the storage unit. (Am. Compl. at ¶ 5.) Cirotto also alleged that, although defendants disposed of his property "on March 5, 2022," defendants "allow[ed him] to unwittingly continue to send in [his] full monthly rental payments," for March, April, and May 2022. (Am. Compl. at ¶ 49.) Cirotto asked the court to award him damages in an amount exceeding $1,750,000.

{¶ 10} On October 27, 2022, defendants filed a Civ.R. 12(B)(6) motion to dismiss the amended complaint. Defendants noted that, while Cirotto had a rental agreement with Self Storage, he did not have a contract or any other relationship with Robert LeVeck, Jennifer LeVeck, Sigler, American Self Storage of Grove City, LLC, LeVeck Commercial Construction & Development, LLC, Attorney Lewis, or the Law Offices of W. Blair Lewis, LLC (the "seven defendants"). As such, defendants asserted the "only claim that could possibly be valid [was the] breach of contract claim against [Self Storage]." (Oct. 27, 2022 Mot. to Dismiss at 6.) Cirotto filed a response to defendants' motion to dismiss on January 23, 2023.

{¶ 11} On March 9, 2023, the trial court issued a decision and entry granting in part and denying in part defendants' motion to dismiss the amended complaint. The court dismissed Cirotto's claims for IIED, fraud, extortion, and for injunctive relief with respect to every defendant, and dismissed Cirotto's claims for breach of contract and promissory

estoppel against the seven defendants. The court denied defendants' motion to dismiss Cirotto's claims for breach of contract and promissory estoppel against Self Storage.

{¶ 12} On April 2, 2023, Self Storage filed a motion stating it was confessing liability in the case and asking the trial court to enter judgment against it with respect to liability. Cirotto filed a response opposing Self Storage's motion confessing liability. On April 25, 2023, the court issued an order entering judgment against Self Storage with respect to liability for breach of contract. The court also dismissed Cirotto's remaining claim for promissory estoppel.

{¶ 13} On April 27, 2023, Cirotto filed a motion to compel discovery from Self Storage. On June 26, 2023, Self Storage moved for a protective order limiting discovery. Self Storage noted Cirotto's motion to compel sought documents "that [were] not relevant to the matter of damages and [went] well beyond the scope of relevant information for any of his original claims." (June 26, 2023 Mot. For Protective Order at 2.) On July 12, 2023, the trial court issued an entry denying Cirotto's motion to compel discovery and granting Self Storage's motion for a protective order. The court stated that, "[t]o avoid undue burden and expense," discovery would be "limited to only what is relevant to the issue of damages." (July 12, 2023 Entry & Order at 2.) The court referred the case to a magistrate for a damages hearing.

{¶ 14} The parties appeared before the magistrate for a damages hearing on November 13, 2023. Cirotto testified at the hearing and submitted a document titled "Plaintiff Christopher Cirotto's Listing of All of his Worldly Precious Personal Possessions." The list identified the items Cirotto claimed were contained in his storage unit, including items such as "Macy's Suits" valued at $4,000, "Leather Jackets" valued at $1,000, "Unworn-in Box Dress Shoes" valued at $300, a "High Wattage Multi-Channel Stereo Receiver" valued at $1,000, a "Luxury Leather Sofa w/Reclining Ends" valued at $2,500, "(2) Silk Ficus Trees" valued at $300, an "Electric Bike w/extras" valued at $1,500, and a "Mountain Bike – Multi Speed" valued at $250. (List of Possessions at 2-9.) The list also identified items such as a "Handmade 20-Piece Nativity Set" valued at $1,000,001; Cirotto's mother's rosary valued at $500,001; a handwritten cookbook valued at $250,000; and an assortment of personal letters valued at "a Billion $$$." (List of Possessions at 13.) On cross-examination, Cirotto acknowledged that on June 14, 2022, he filed a police report regarding the items in his storage unit. Cirotto admitted he identified significantly less

property on the police report than he identified on his List of Possessions. Sigler also testified at the hearing and authenticated photographs she took of Cirotto's storage unit shortly after she cut the lock to the unit in late February 2022.

{¶ 15} On November 20, 2023, the magistrate issued a decision regarding damages. The magistrate found Cirotto's testimony at the hearing "lacked a great deal of credibility" and that "any value Plaintiff placed on his property was heavily inflated; untrustworthy; and not tethered to reality." (Nov. 20, 2023 Mag.'s Decision at 6, 9.) The magistrate noted Cirotto's "emotional valuation" of his property was "clearly driven by a desire to punish the Defendant." (Mag.'s Decision at 3.) However, the magistrate also noted the photographs Self Storage produced clearly demonstrated "personal property was in fact present in the unit." (Mag.'s Decision at 9.) The magistrate awarded Cirotto $7,500 for the loss of his personal property, $5,000 for the loss of his sentimental property, and $525 for the three months of rental payments Self Storage retained after it disposed of his property.

{¶ 16} On December 4, 2023, Cirotto filed a 20-page objection to the magistrate's decision. On December 11, 2023, Self Storage filed an objection to the magistrate's decision asserting the magistrate's damages award was excessive.

{¶ 17} On April 17, 2024, the trial court issued a decision and entry overruling Cirotto's objection and sustaining in part and overruling in part Self Storage's objection to the magistrate's decision. The court summarily overruled Cirotto's objection because his objection exceeded the page limitation set forth in Loc.R. 12.01 of the Court of Common Pleas of Franklin County, General Division. The court overruled Self Storage's objection in part and adopted the magistrate's award of $7,500 for the loss of Cirotto's personal property and the award of $525 for the retained rental payments. The court sustained Self Storage's objection in part and rejected the magistrate's award of $5,000 for the loss of Cirotto's sentimental property. As such, the court entered judgment in favor of Cirotto in the amount of $8,025.

## II. Assignments of Error

{¶ 18} Cirotto appeals, assigning the following three errors for our review:

> [I.] As a matter of law, The Trial Court errored and abused its discretion, by its wrongful and erroneous unwillingness to rightfully construe my valid, relevant and well-pleaded First Amended Complaint, in the light most favorable to me, the victimized Plaintiff-Appellant; Nor did it rightfully accept ALL

of my well-pleaded factual allegations as being True; Nor did it draw all reasonable inferences in favor of me the victimized Pro Se Plaintiff, as prescribed by law.

[II.] The Trial Court Errored & Abused its Discretion, as a matter of equitable, evenhanded, and customary justice, when the Trial Court wrongly disallowed and denied me, the aggrieved & victimized Plaintiff-Appellant, **ANY** participation, of any kind, in the normal & customary Discovery Process that normally ensues, that grants an aggrieved Plaintiff like me, the allowable access to ALL relevant material facts and evidence(s), as well as ALL access to supporting witnesses contact information, to obtain their supporting testimonies. All of which would enhance, fully support, and prove **ALL** of my relevant and well-pleaded factual allegations, and Claims, and Causes of Action, against each of the 8 appropriately named co-defendants, contained in my First Amended Complaint, as is normal & customary in legitimate civil cases.

[III.] Based upon all of the well-taken arguments in both of my First & Second Assignment of Errors, as convincingly argued herein; The Trial Court Errored & Abused its' Discretion by Issuing its untimely and inappropriate (*April 17, 2024 Decision & Judgement Entry & Final Appealable Order, that is properly attached to my May 16, 2024, Notice of Appeal to this Appellate Court*) I appeal to the Court's entire Order from beginning to end, but most especially the inequitable and unrealistic final total relief amount of $7500.00 as being all the relief that I am supposedly entitled to for what I have had to endure.

(Emphasis in original.) (Sic passim.)

## III. First Assignment of Error—Civ.R. 12(B)(6) Dismissal

{¶ 19} In his first assignment of error, Cirotto asserts the trial court erred by failing to construe his amended complaint in a light most favorable to him. Cirotto contends he had a "right to pursue all of his Claims that [he] ma[de], against all 8 of the named co-defendants." (Appellant's Brief at 15.) We note pro se litigants such as Cirotto are held to the same rules, procedures, and standards as litigants represented by counsel. *See, e.g., Zukowski v. Brunner*, 2010-Ohio-1652, ¶ 8; *State ex rel. Fuller v. Mengel*, 2003-Ohio-6448, ¶ 10; *Sabouri v. Ohio Dept. of Job & Family Servs.*, 145 Ohio App.3d 651, 654 (10th Dist. 2001).

{¶ 20} Ohio is a notice pleading state. *Ohio Neighborhood Preservation Assn. v. Alaura*, 2023-Ohio-1281, ¶ 10 (10th Dist.). "The purpose of a notice pleading standard is to provide defendants with ' "fair notice of the nature of the action." ' " *Id*., quoting *Boyland v. Giant Eagle*, 2017-Ohio-7335, ¶ 16 (10th Dist.), quoting *Ford v. Brooks*, 2012-Ohio-943, ¶ 13 (10th Dist.). "[A] plaintiff is not required to prove his or her case at the pleading stage." *York v. Ohio State Hwy. Patrol*, 60 Ohio St.3d 143, 144-45 (1991). A pleading sufficiently sets forth a claim for relief if it includes "(1) a short and plain statement of the claim showing that the party is entitled to relief, and (2) a demand for judgment for the relief to which the party claims to be entitled." Civ.R. 8(A).

{¶ 21} A Civ.R. 12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted is procedural and tests the sufficiency of the complaint. *Rudd v. Ohio State Hwy. Patrol*, 2016-Ohio-8263, ¶ 11 (10th Dist.). When ruling on a Civ.R. 12(B)(6) motion to dismiss, the trial court must presume all factual allegations in the complaint are true, construe the complaint in a light most favorable to the plaintiff, and make all reasonable inferences in favor of the plaintiff. *Brown v. Ohio Dept. of Rehab. & Corr.*, 2013-Ohio-4012, ¶ 6 (10th Dist.), citing *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 192 (1988). A trial court " 'is confined to the averments set forth in the complaint and cannot consider outside evidentiary materials' " when considering a Civ.R. 12(B)(6) motion. *Morrissette v. DFS Servs., LLC*, 2011-Ohio-2369, ¶ 20 (10th Dist.), quoting *Hutchinson v. Beazer East, Inc.*, 2006-Ohio-6761, ¶ 14 (8th Dist.). While a trial court must presume all factual allegations contained in the complaint are true, the court need not accept as true any unsupported and conclusory legal propositions advanced in the complaint. *Rudd* at ¶ 12, citing *Morrow v. Reminger & Reminger Co., LPA*, 2009-Ohio-2665, ¶ 7 (10th Dist.).

{¶ 22} A trial court properly dismisses a complaint for failure to state a claim upon which relief can be granted when it appears beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him or her to relief. *Rudd* at ¶ 11, citing *O'Brien v. Univ. Community Tenants Union, Inc.*, 42 Ohio St.2d 242 (1975), syllabus. "[A]s long as there is a set of facts, consistent with the plaintiff's complaint, which would allow the plaintiff to recover, the court may not grant a defendant's motion to dismiss." *York*, 60 Ohio St.3d at 145. An appellate court reviews a trial court's dismissal pursuant to Civ.R. 12(B)(6) under a de novo standard of review. *State ex rel. Ohio Civ. Serv. Emps. Assn. v. State*, 2016-Ohio-478, ¶ 12.

**A. IIED**

{¶ 23} The trial court dismissed Cirotto's IIED claim in its entirety. The court concluded that, while Cirotto alleged "the Defendants acted through inappropriate means to empty the unit and auction the items inside," the defendants' conduct "[was] not extreme and outrageous conduct as a matter of law." (Mar. 9, 2023 Decision & Entry at 6.) The court noted Cirotto may have been "inconvenienced and frustrated with the situation," but found such facts insufficient "to sustain a cause of action for IIED." (Mar. 9, 2023 Decision & Entry at 6.)

{¶ 24} To state a claim for IIED, a plaintiff must allege the following: (1) the defendant intended to cause or knew or should have known their actions would result in serious emotional distress; (2) the defendant's conduct was so extreme and outrageous that it went beyond all possible bounds of decency and can be considered completely intolerable in a civilized community; (3) the defendant's actions proximately caused psychological injury to the plaintiff; and (4) the plaintiff suffered serious mental anguish of a nature no reasonable person could be expected to endure. *Morrow*, 2009-Ohio-2665, at ¶ 45 (10th Dist.), citing *Ashcroft v. Mt. Sinai Med. Ctr.*, 68 Ohio App.3d 359, 366 (8th Dist. 1990).

{¶ 25} Thus, liability for intentional infliction of emotional distress " 'is found only where the conduct is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.' " *Meminger v. Ohio State Univ.*, 2017-Ohio-9290, ¶ 15 (10th Dist.), quoting *Mendlovic v. Life Line Screening of Am., Ltd.*, 2007-Ohio-4674, ¶ 47 (8th Dist.). "In general, 'it must be conduct that would lead an average member of the community to exclaim, "Outrageous!" ' " *Id.*, quoting *Perkins v. Lavin*, 98 Ohio App.3d 378, 383 (9th Dist. 1994). "A defendant's conduct is not extreme and outrageous simply because it is criminal and/or characterized by malice." *Morrow* at ¶ 49, citing *Yeager v. Local Union 20*, 6 Ohio St.3d 369, 374-75 (1983). Indeed, only conduct which is "truly outrageous . . . is actionable; persons are expected to be hardened to a considerable degree of inconsiderate, annoying and insulting behavior." *Strausbaugh v. Ohio Dept. of Transp.*, 2002-Ohio-6627, ¶ 15 (10th Dist.). Whether conduct is extreme and outrageous is a question of law. *Morrow* at ¶ 48, citing *Bell v. Ohio State Bd. of Trustees*, 2007-Ohio-2790, ¶ 24 (10th Dist.).

{¶ 26} In the amended complaint, Cirotto alleged defendants engaged in extreme and outrageous conduct. (Am. Compl. at ¶ 65(B).) Cirotto noted his storage unit contained

"almost ALL of [his] precious earthly possessions, valuables, and priceless and irreplaceable family keepsakes . . . and family heirlooms." (Am. Compl. at ¶ 16.) Cirotto alleged that, when he went to Self Storage to pay his late rent on February 21, 2022, Sigler "informed [him] that the Defendants had already cut [his] lock, and that ALL his possessions are now theirs, and that they are sending all of his earthly possessions to auction." (Am. Compl. at ¶ 34.) Cirotto further alleged that on February 26, 2022, when he went to Self Storage and handed his late rent and request for a judicial hearing to Sigler, she became "outraged . . . demanded that [he] take them back, and stated to [him] that it was too late, and that [he] was going to lose ALL of [his] possessions." (Am. Compl. at ¶ 42.) Cirotto claimed the February 26, 2022 encounter "left [him] physically and emotionally ill for the remainder of the day." (Am. Compl. at ¶ 42.)

{¶ 27} On March 2, 2022, "3 days before the threatened disposal of ALL of [his] property," Cirotto filed his complaint and motion for a TRO in Fairfield County "so that [he] and [his] precious belongings would be protected." (Am. Compl. at ¶ 45.) On March 3, 2022, the Fairfield County court granted Cirotto a TRO which restrained Self Storage from disposing of his property. Cirotto alleged Self Storage "intentionally decided to disobey and defy [the] valid March 3, 2022 TRO of Protection" when they "broke in [to the storage unit] and stole, and disposed of, and/or sold, ALL of [his] possessions" on "March 5, 2022." (Am. Compl. at ¶ 16, 49.) Cirotto noted defendants' violation of the TRO "directly resulted in [his] Total Loss of All of [his] precious and legally protected possessions, (many, many of which are priceless and irreplaceable heirlooms)." (Am. Compl. at ¶ 17.) Cirotto also noted the Fairfield County court held Self Storage in contempt for violating the TRO on June 7, 2022. (Am. Compl. at ¶ 45.)

{¶ 28} In its decision dismissing Cirotto's IIED claim, the trial court did not expressly address the fact that Self Storage disposed of Cirotto's property in violation of the Fairfield County TRO. (Mar. 9, 2023 Decision & Entry at 6.) Notably, in their Civ.R. 12(B)(6) motion to dismiss, defendants acknowledged the "auctioning of the items contained in the storage unit" could "possibly be considered outrageous conduct." (Oct. 27, 2022 Mot. to Dismiss at 11.)

{¶ 29} In *Brown v. Denny*, 72 Ohio App.3d 417 (2d Dist. 1990), the court found that a party's decision to violate a court order could amount to extreme and outrageous conduct for purposes of an IIED claim. The underlying facts in *Brown* demonstrated an Ohio court

had ordered the plaintiff, Brown, to have daily visitation with his children for one week in August 1987, when he traveled to Ohio from his home in Nevada to see the children. Brown's ex-wife "was aware of the visitation order," but shortly before the scheduled visitation, Donald and Shelia Denny, the children's maternal grandparents, "took their daughter and two grandchildren to their home in Tennessee." *Id.* at 419. Brown filed suit against the Dennys for tortious interference with his visitation rights and IIED. The case proceeded to trial and the court granted the Dennys' motion for a directed verdict on all claims. The evidence demonstrated the Dennys knew of the visitation order and "decided to support their daughter in her decision to violate [the] visitation order." *Id.* at 423. The appellate court reversed the trial court's decision granting the Dennys a directed verdict on Brown's IIED claim. The appellate court noted that, considering the facts, it was "not prepared to say that reasonable minds [could] only come to the conclusion that the Dennys' conduct was not outrageous. In [the appellate court's] view, reasonable minds could come to differing conclusions on this issue." *Id.* at 423.

{¶ 30} Viewing the allegations in the amended complaint in a light most favorable to Cirotto, we find the allegations are sufficient to allege extreme and outrageous conduct by Self Storage. The allegations indicated Self Storage accessed the storage unit containing Cirotto's irreplaceable family heirlooms by February 21, 2022; Self Storage informed Cirotto on February 21 and 26, 2022 it intended to dispose of his property; Cirotto obtained the TRO on March 3, 2022, specifically to prevent Self Storage from disposing of his property; and, on March 5, 2022, Self Storage auctioned Cirotto's property in direct violation of the TRO issued just two days prior. Self Storage's decision to dispose of Cirotto's irreplaceable family heirlooms in direct violation of the TRO was intolerable. *See also Franklin v. Vencor Hosp.*, 1997 Tenn. App. LEXIS 637, *5 (Tenn. App. Sept. 19, 1997) (emphasis in original) (finding a hospital's "progressively exacerbative" refusal to produce medical records pertaining to the plaintiff's deceased mother amounted to outrageous conduct for purposes of the plaintiff's IIED claim, because the plaintiff requested the records, a chancery court ordered the hospital to produce the records, and the chancery court ultimately held the hospital in contempt for refusing to produce the records, "with the requested information *still not forthcoming*"); *Liadis v. Sears, Poebuck & Co.*, 47 Fed. Appx. 295, 301, fn. 1 (6th Cir. 2002) (noting the "repeated nature of the threats" may "elevate[] the conduct from minor indignity to outrageousness").

{¶ 31} Accordingly, we find Cirotto pled sufficient facts to establish extreme and outrageous conduct by Self Storage. The amended complaint does not allege any extreme or outrageous conduct by the seven defendants.[1]

{¶ 32} We further find Cirotto pled sufficient facts to support the remaining elements of his IIED claim against Self Storage. To satisfy the first element, the plaintiff must allege " 'the actor desire[d] to inflict severe emotional distress, * * * [or the actor knew] that such distress [was] certain, or substantially certain, to result from his conduct. It applies also where he acts recklessly, * * * in deliberate disregard of a high degree of probability that the emotional distress will follow.' " *Krukrubo v. Fifth Third Bank*, 2007-Ohio-7007, ¶ 26 (10th Dist.), quoting Restatement of the Law 2d, Torts (1965), Section 46, Comment i. *See Slusher v. Oeder*, 16 Ohio App.3d 432, 435 (12th Dist. 1984) (finding the defendant's actions of "making continuous and repeated advances towards [plaintiff's wife] indicate[d] a conscious disregard on his part of the high degree of probability that mental distress could follow from his conduct"). The facts noted above, demonstrating Self Storage disposed of Cirotto's irreplaceable family heirlooms in direct violation of a TRO issued just two days prior, were sufficient to allege Self Storage acted with a conscious disregard of the high probability that severe emotional distress would follow from its actions.

{¶ 33} The third and fourth elements required Cirotto to allege facts demonstrating Self Storage proximately caused his psychological injury and that he suffered serious mental anguish. *See Morrow*, 2009-Ohio-2665, at ¶ 47 (10th Dist.). Cirotto alleged defendants' conduct "[was] the direct cause, that ha[d] caused [him] severe emotional distress." (Am. Compl. at ¶ 65(C).) Cirotto claimed that, as a result of the "intentional theft and disposal of ALL of [his] legally protected possessions" in the storage unit, he had been in a "constant state of uneasiness, discomfort, nervousness, worry, anxiety, panic, and sorrow, and agonizing fear of the unknown," and had experienced "severe headaches, severe stomach aches, severe pain to [his] heart and chest, severe nausea, and severe sleeplessness." (Am. Compl. at ¶ 27.) Cirotto stated the "stress and anxiety caused by all of

---

[1] In the amended complaint, Cirotto alleged "by [his] Motion to the Fairfield Court, [Robert LeVeck] was successfully added to the Fairfield County Complaint and TRO of Protection in May 2022." (Am. Compl. at ¶ 17.) Even accepting these allegations as true, they demonstrate the TRO did not apply to Robert LeVeck individually when Self Storage sold Cirotto's property on March 5, 2022.

this" had resulted in "emotional devastation and distress at its worst." (Am. Compl. at ¶ 64.)

{¶ 34} Accordingly, presuming all factual allegations in the complaint are true and construing the amended complaint in a light most favorable to Cirotto, we find Cirotto pled sufficient facts to support his claim for IIED against Self Storage. We reiterate that Ohio is a notice pleading state and a party is not required to prove their cause of action at the pleading stage. *See King v. Bogner*, 88 Ohio App.3d 564, 569 (2d Dist. 1993). Based on the foregoing, we reverse the trial court's dismissal of Cirotto's IIED claim against Self Storage. We affirm the court's dismissal of Cirotto's IIED claim with respect to the seven defendants.

### B. Fraud

{¶ 35} The trial court dismissed Cirotto's claim for fraud in its entirety. The court determined Cirotto failed to "identify, with particularity, any actions by specific defendants that would constitute the necessary elements for fraud." (Mar. 9, 2023 Decision & Entry at 7.) To establish a claim for fraud, a plaintiff must demonstrate the following: (1) a representation or, where there is a duty to disclose, concealment of a fact; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the representation or concealment; and (6) a resulting injury proximately caused by the reliance. *Adams v. Margarum*, 2017-Ohio-2741, ¶ 13 (10th Dist.), citing *Burr v. Bd. of Cty. Commrs.*, 23 Ohio St.3d 69, 73 (1986). *Accord Tokles & Son, Inc. v. Midwestern Indemn. Co.*, 65 Ohio St.3d 621, 632 (1992).

{¶ 36} Civ.R. 9(B) provides that, "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Civ.R. 9(B). Typically, a plaintiff must allege with particularity "the time, place, and content of the false representation, the fact represented, the individual who made the representation, and the nature of what was obtained or given as a consequence of the fraud." *Adams* at ¶ 14, citing *Lundeen v. Smith-Hoke*, 2015-Ohio-5086, ¶ 21 (10th Dist.). "Failure to plead the elements of fraud with particularity results in a defective claim that cannot withstand a Civ.R. 12(B)(6) motion to dismiss." *Morrow*, 2009-Ohio-2665, at ¶ 20 (10th Dist.).

{¶ 37} In the amended complaint, Cirotto alleged that on February 21, 2022, Sigler informed him he owed Self Storage the "intentionally false and extortive amount of $613.00. When in fact, [he] actually legitimately owed only $415.40." (Am. Compl. at ¶ 34.) Cirotto further alleged that on February 26, 2022, he personally delivered the "full and appropriate payment of $415.40 that was legitimately due for January's and February's 2022 rental" to Self Storage. (Am. Compl. at ¶ 41.) Cirotto stated he could "not in good conscience or affordability submit the fraudulent, and illegitimate, and extortive amount of $613.00 that the Defendants were intentionally misrepresenting and illegitimately demanding." (Am. Compl. at ¶ 41.)

{¶ 38} Thus, while Cirotto alleged Self Storage falsely represented he owed Self Storage $613, Cirotto did not allege any facts demonstrating he justifiably relied on Self Storage's representation. To the contrary, Cirotto stated he did not pay Self Storage the $613 because he could not afford to do so. *See Canterbury v. Columbia Gas of Ohio*, 2001 U.S. Dist. LEXIS 26286, *39-40 (S.D.Ohio Sept. 25, 2001) (noting the plaintiff failed to state a claim for fraud because she alleged she "refused to pay any of the $98.35 balance as Columbia demanded," and thus, by her "own account, she was not induced to take any action to her detriment by Columbia's alleged fraudulent scheme").

{¶ 39} Accordingly, because Cirotto did not allege any facts demonstrating he justifiably relied on Self Storage's allegedly false representation, he failed to adequately state a claim for fraud. The trial court properly dismissed Cirotto's fraud claim.

**C. Extortion**

{¶ 40} The trial court dismissed Cirotto's claim for extortion in its entirety. The court found the amended complaint failed to allege facts demonstrating any of the defendants acted with the purpose to obtain a valuable thing or benefit from Cirotto.

{¶ 41} R.C. 2905.11 defines the criminal offense of extortion, providing as follows:

> (B) No person, with purpose to obtain any valuable thing or valuable benefit or to induce another to do an unlawful act, shall do any of the following:
>
> (1) Threaten to commit any felony;
>
> (2) Threaten to commit any offense of violence;
>
> (3) Violate section 2903.21 or 2903.22 of the Revised Code;

(4) Utter or threaten any calumny against any person;

(5) Expose or threaten to expose any matter tending to subject any person to hatred, contempt, or ridicule, or to damage any person's personal or business repute, or to impair any person's credit.

{¶ 42} R.C. 2307.60(A)(1) provides that "[a]nyone injured in person or property by a criminal act has, and may recover full damages in, a civil action unless specifically excepted by law . . . ." Proof of an underlying criminal conviction is not required to maintain an action under R.C. 2307.60. *Buddenberg v. Weisdack*, 2020-Ohio-3832, ¶ 11. Thus, R.C. 2307.60 "provides a civil remedy for damages resulting from a criminal act." *Argote-Romero v. Laz Parking Ltd., LLC*, 2025-Ohio-400, ¶ 12 (10th Dist.). *Accord Jacobson v. Kaforey*, 2016-Ohio-8434, ¶ 10 (stating "R.C. 2307.60(A)(1), by its plain and unambiguous terms, creates a statutory cause of action for damages resulting from any criminal act").

{¶ 43} In the amended complaint, Cirotto alleged Self Storage "intentionally threatened" him with the "loss of ALL of [his] precious [] possessions" and "threatened to drag [him] into Court and sue [him] for everything else [he] may have had," unless he paid Self Storage "an extra amount of illegitimate, and fraudulent, and extortive amount(s) of money that [he] did not legitimately owe to them." (Am. Compl. at ¶ 5(g).) As noted, Cirotto alleged Self Storage claimed he owed the "extortive amount of $613.00," when he owed Self Storage only $415.40. (Am. Compl. at ¶ 34.)

{¶ 44} Viewing the allegations in a light most favorable to Cirotto, the allegations demonstrate Self Storage attempted to obtain $197.60 ($613.00 - $415.40) from him, and that Self Storage threatened to sue him and take his property if he did not pay Self Storage the money. Initially, courts have found that " 'a threat to file a civil lawsuit absent payment of a settlement does not constitute the criminal offense of attempted extortion.' " *Argote-Romero* at ¶ 35, quoting *Collins v. Allen*, 2005 U.S. Dist. LEXIS 9017, *3 (S.D.Ohio Mar. 16, 2005). "[A] threat to pursue a civil action, even if such action would be entirely frivolous or brought in bad faith, does not constitute extortion." *Tilberry v. McIntyre*, 135 Ohio App.3d 229, 241 (8th Dist. 1999). *Accord Collins*, 2005 U.S. Dist. LEXIS 9017, *4, quoting *Hts. Community Congress v. Smythe*, 862 F.Supp. 204, 207 (N.D.Ohio 1994) (noting "the several courts which have faced the issue hold uniformly that it would be 'absurd' to conclude that extortion includes threatening litigation"); *McGee v. East Ohio Gas Co.*, 111

F.Supp.2d 979, 988 (S.D.Ohio 2000). Thus, the allegations indicating Self Storage threatened to sue Cirotto if he did not pay Self Storage $613 did not assert a claim for extortion.

{¶ 45} A threat to commit a felony theft offense may support a claim for extortion under R.C. 2905.11(A)(1). *See Key Realty, Ltd. v. Hall*, 2021-Ohio-1868, ¶ 110 (6th Dist.) (finding that, "to the extent that Hall threatened to continue to deprive Key Realty of property that belonged to it (i.e., engage in a theft offense) if Key Realty would not agree to release him from his noncompete agreement (i.e., a valuable benefit)," a "question of fact exist[ed] regarding whether Hall's conduct rose to the level of extortion"). However, the facts alleged in the amended complaint demonstrated Cirotto rented a storage unit from Self Storage and failed to pay his rent for the unit. Although Cirotto claimed he owed Self Storage only $415.40 in late rent, while Self Storage claimed he owed $613.00 in late rent and fees, the allegations demonstrated Cirotto owed Self Storage money pursuant to the terms of the parties' rental agreement. *See Argote-Romero* at ¶ 28, citing *State v. Snowden*, 7 Ohio App.3d 358 (10th Dist. 1982) (noting this court has found "a defendant acts with an honest purpose when he attempts to collect funds that they reasonably believed they had a right to collect, even if that belief is mistaken").

{¶ 46} R.C. 5322.02(A) provides that the "owner of a self-service storage facility has a lien against the occupant on the personal property stored pursuant to a rental agreement in any storage space at the self-service storage facility" for the "rent, labor, late fees, or other charges in relation to the personal property that are specified in the rental agreement." R.C. 5322.03 provides that the "owner's lien created by [R.C. 5322.02(A)] for a claim that has become due may be enforced" pursuant to the terms stated in R.C. 5322.03 regarding notification, advertisement, and sale procedures. *See also 6750 BMS, L.L.C. v. Drentlau*, 2016-Ohio-1385, ¶ 37 (8th Dist.) (noting if a storage facility does "not follow the procedures set forth in R.C. 5322.03, it [can] not enforce its owner's lien against the occupant of the unit").

{¶ 47} Accordingly, because Self Storage had a statutory lien on the property in Cirotto's storage unit, Cirotto did not allege facts demonstrating Self Storage threatened to commit a felony theft offense. Rather, the allegations indicated Self Storage threatened to enforce its owner's lien on the property pursuant to R.C. Chapter 5322. *Compare Argote-Romero* at ¶ 33-34 (finding the plaintiff could not succeed on her claim for extortion against

a parking meter enforcement company, because the company's acts of "booting her vehicle and threatening to withhold possession of the vehicle until the alleged parking fines and fees were paid" did not amount to a theft offense); *Canterbury*, 2001 U.S. Dist. LEXIS 26286, at *41 (finding a gas company's "threat[]" to shut off the plaintiff's gas service "if she did not pay the disputed debt" did not "rise to [the] level of extortion under Ohio law").

{¶ 48} Our review of the complaint demonstrates Cirotto failed to allege facts sufficient to state a claim for extortion under R.C. 2905.11 and 2307.60. As such, the trial court properly dismissed Cirotto's claim for extortion.

### D.  Injunctive Relief

{¶ 49} In the amended complaint, Cirotto asserted a "claim" for injunctive relief. Cirotto asked the court to grant him a "preliminary injunction" enjoining the defendants "from transferring any of their assets to any other entity," since a jury was likely to award him damages of "great monetary significance." (Am. Compl. at ¶ 83-84.) Because there were no allegations in the amended complaint indicating the defendants were actively transferring their assets, the trial court found Cirotto's request for injunctive relief "completely speculative." (Mar. 9, 2023 Decision at 9.) The court also found injunctive relief inappropriate because Cirotto could be compensated by money damages.

{¶ 50} "In general, injunctive relief is a remedy, not a cause of action." *Bresler v. Rock*, 2018-Ohio-5138, ¶ 45 (10th Dist.) *Accord Woods v. Sharkin*, 2022-Ohio-1949, ¶ 70 (8th Dist.) (noting "injunctive relief is a remedy, not a cause of action"). " 'A party is not entitled to an injunction absent an order for relief, to which he is entitled only after demonstrating a basis for his claim for relief.' " *MWL Ents., LLC v. Mid-Miami Invest. Co.*, 2021-Ohio-1742, ¶ 37 (2d Dist.), quoting *Lowry v. Cox*, 1992 Ohio App. LEXIS 5825, *6-7 (2d Dist. Nov. 16, 1992). Accordingly, Cirotto's "claim" for an injunction did not state a claim for relief.

{¶ 51} Moreover, a party requesting a preliminary injunction must demonstrate (1) a substantial likelihood that the plaintiff will prevail on the merits, (2) the plaintiff will suffer irreparable injury if the injunction is not granted, (3) no third parties will be unjustifiably harmed if the injunction is granted, and (4) the public interest will be served by the injunction. *Garb-Ko, Inc. v. Benderson*, 2013-Ohio-1249, ¶ 32 (10th Dist.). "An injunction is an extraordinary remedy in equity, which is available only where there is no adequate remedy available at law." *Brentlinger Ents. v. Curran*, 141 Ohio App.3d 640, 646

(10th Dist. 2001), citing *Garono v. State*, 37 Ohio St.3d 171, 173 (1988). *See Castillo-Sang v. Christ Hosp. Cardiovascular Assocs., LLC*, 2020-Ohio-6865, ¶ 43 (1st Dist.) (noting "if a party's loss can be compensated by money damages, he has not sustained irreparable harm, and therefore injunctive relief is not appropriate").

{¶ 52} Cirotto did not allege facts demonstrating he would suffer an irreparable injury absent injunctive relief. Nothing in the amended complaint indicated the defendants were transferring or about to dispose of their assets. Moreover, the allegations in the amended complaint demonstrated Cirotto's property loss could be compensated by money damages. Accordingly, the trial court did not err by dismissing Cirotto's claim for injunctive relief.

### E. Breach of Contract

{¶ 53} The trial court dismissed Cirotto's claim for breach of contract against the seven defendants because Cirotto did not allege facts indicating he had a contract with any of the seven defendants. To demonstrate a claim for breach of contract, a plaintiff must establish "(1) the existence of a contract, (2) performance by the plaintiff, (3) breach by the defendant, and (4) damages or loss resulting from the breach." *Claris, Ltd. v. Hotel Dev. Servs., LLC*, 2018-Ohio-2602, ¶ 28 (10th Dist.), citing *Lucarell v. Nationwide Mut. Ins. Co.*, 2018-Ohio-15, ¶ 41.

{¶ 54} Although Cirotto alleged he had a contract with Self Storage, he did not allege facts demonstrating the existence of a contract between himself and any of the seven defendants. As such, the trial court properly dismissed Cirotto's claim for breach of contract against the seven defendants. *See In re Estate of Vasko*, 2013-Ohio-4060, ¶ 4 (10th Dist.) (noting "a non-party to [an] agreement or contract, cannot breach the alleged contract"); *Three-C Body Shops, Inc. v. Nationwide Mut. Fire Ins. Co.*, 2017-Ohio-1461, ¶ 15 (10th Dist.).

### F. Promissory Estoppel

{¶ 55} The trial court dismissed Cirotto's promissory estoppel claim against the seven defendants because he did not allege any facts demonstrating the seven defendants made a promise to him. To establish a claim for promissory estoppel, a plaintiff must demonstrate (1) a promise, (2) which is clear and unambiguous in its terms, (3) reliance by the plaintiff that is reasonable and foreseeable, and (4) an injury caused by the plaintiff's reliance on the promise. *Patel v. Univ. of Toledo*, 2017-Ohio-7132, ¶ 21 (10th Dist.); *Patrick*

*v. Painesville Commercial Properties, Inc.*, 123 Ohio App.3d 575, 583 (11th Dist. 1997). Because Cirotto did not allege any of the seven defendants made a promise to him, the trial court properly dismissed Cirotto's claim for promissory estoppel against the seven defendants.

**{¶ 56}** Based on the foregoing, we overrule in part and sustain in part Cirotto's first assignment of error. We remand the case to the trial court solely for further proceedings on Cirotto's claim for IIED against Self Storage. Our remand for further proceedings on Cirotto's IIED claim does not reopen the case to litigation on any of the other claims which were properly dismissed or resolved in the trial court. *See Brown v. Gray*, 2022 U.S. Dist. LEXIS 150802, *3 (S.D.Ohio Aug. 22, 2022) (noting "[a]n appellate judgment that affirms most of a district court's final judgment but remands one claim does not reopen the judgment for litigation of other claims"); *Bowens v. Bowens*, 2022-Ohio-1383, ¶ 13 (10th Dist.), citing *Cugini & Capoccia Builders, Inc. v. Ciminello's, Inc.*, 2006-Ohio-5787, ¶ 32 (10th Dist.) (noting that "[w]hen an appellate court remands a case for a limited purpose, the trial court must accept all issues previously adjudicated as finally settled").

## IV. Second Assignment of Error—Discovery

**{¶ 57}** In his second assignment of error, Cirotto asserts the trial court erred by denying him discovery. Cirotto claims the trial court wrongfully denied him discovery "against ALL of the named defendants, regarding ALL of [his] well-taken claims and causes of action." (Appellant's Brief at 37.)

**{¶ 58}** After the trial court granted defendants' Civ.R. 12(B)(6) motion in part, Self Storage admitted it was liable for breach of contract. As such, on April 25, 2023, the trial court issued a judgment finding Self Storage liable for breach of contract and dismissing Cirotto's remaining claim for promissory estoppel. *See Kashif v. Cent. State Univ.*, 133 Ohio App.3d 678, 684 (10th Dist. 1999), quoting *Warren v. Trotwood-Madison School Dist. Bd. of Edn.*, 1999 Ohio App. LEXIS 1035, *19 (2d Dist. Mar. 19, 1999) (stating that " '[p]romissory estoppel is inconsistent with the existence of an express written contract' "). Thereafter, Self Storage filed a Civ.R. 26(C) motion for a protective order asking the court to limit discovery to the issue of damages. The court granted Self Storage's motion for a protective order and limited discovery to "only what [was] relevant to the issue of damages." (July 12, 2023 Entry & Order at 2.)

{¶ 59} A trial court has the inherent power to manage discovery in cases pending before it. *Jezerinac v. Dioun*, 2020-Ohio-587, ¶ 31 (10th Dist.). Discovery is limited to relevant information that is proportional to the needs of the case. Civ.R. 26(B)(1). Civ.R. 26(C) provides a trial court may issue protective orders limiting discovery "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Thus, Civ.R. 26 "grants discretion to a trial court to limit pre-trial discovery so as to prevent abuse." *Thompson v. Curtin*, 1997 Ohio App. LEXIS 2103, *3-4 (10th Dist. May 15, 1997), citing *Doe v. Univ. of Cincinnati*, 42 Ohio App.3d 227 (10th Dist. 1988). *See Bland v. Graves*, 85 Ohio App.3d 644, 659 (9th Dist. 1993) (noting a trial court "may permissibly limit discovery so as to prevent mere 'fishing expeditions' in an effort to locate incriminating evidence").

{¶ 60} An appellate court reviews a trial court's discovery rulings, including a trial court's decision to grant a protective order under Civ.R. 26(C), for an abuse of discretion. *See, e.g, Bay Emm Vay Store, Inc. v. BMW Fin. Servs. NA, L.L.C.*, 2018-Ohio-2736, ¶ 11 (10th Dist.); *Ruwe v. Bd. of Twp. Trustees*, 29 Ohio St.3d 59, 61 (1987); *Med. Mut. of Ohio v. Schlotterer*, 2009-Ohio-2496, ¶ 23. The term "abuse of discretion" implies the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983); *Huffman v. Hair Surgeon, Inc.*, 19 Ohio St.3d 83, 87 (1985).

{¶ 61} After Self Storage admitted its liability for breach of contract, and the trial court dismissed all Cirotto's other claims, the only issue remaining in the case was damages resulting from Self Storage's breach of contract. Accordingly, discovery pertaining to any matter other than Cirotto's contract damages would have been unnecessary and caused undue burden and expense. *See Menkhaus v. Menkhaus*, 2022-Ohio-2369, ¶ 46 (1st Dist.) (finding the trial court acted within its discretion to grant husband a protective order limiting discovery because wife's "wide-ranging" discovery requests sought extensive information which was irrelevant "considering the prenuptial agreement"); *Lamtman v. Ward*, 2012-Ohio-4801, ¶ 39 (9th Dist.) (stating that "[b]y limiting the parties to the issue of causation, the trial court exercised control over the proceedings and avoided unnecessary discovery"); *Mitchell v. McNeil*, 487 F.3d 374, 379 (6th Cir. 2007).

{¶ 62} The trial court acted within its discretion when it granted Self Storage a protective order limiting discovery to the issue of damages. However, because we have reversed the court's dismissal of Cirotto's IIED claim against Self Storage, Cirotto will be

entitled to obtain discovery related to his IIED claim on remand. The trial court will retain discretion to manage discovery regarding the IIED claim on remand.

{¶ 63} Based on the foregoing, we overrule Cirotto's second assignment of error.

## V. Third Assignment of Error—Damages

{¶ 64} In his third assignment of error, Cirotto asserts the trial court erred by issuing its April 17, 2024 decision adopting in part and rejecting in part the magistrate's decision regarding damages. Cirotto states he is appealing the "entire Final Order from beginning to end, but most especially the inequitable lowball final total relief amount of $7500.00." (Appellant's Brief at 52.)

{¶ 65} "In giving an award of money damages in a breach of contract action, the intent is to place the injured party in the same position it would have been in had the contract not been breached." *Stratton v. Kent State Univ.*, 2003-Ohio-1272, ¶ 44 (10th Dist.). *Accord Schulke Radio Prods., Ltd. v. Midwestern Broadcasting Co.*, 6 Ohio St.3d 436, 439 (1983). " '[A] party seeking damages for breach of contract must present sufficient evidence to show entitlement to damages in an amount which can be ascertained with reasonable certainty.' " *J&H Reinforcing & Structural Erectors, Inc. v. Ohio School Facilities Comm.*, 2013-Ohio-3827, ¶ 94 (10th Dist.), quoting *Tri-State Asphalt Corp. v. Ohio Dept. of Transp.*, 1995 Ohio App. LEXIS 1554, *14 (10th Dist. Apr. 11, 1995). "Damages need not be calculated with mathematical certainty, but cannot be based on mere speculation and conjecture." *Atelier Dist., LLC v. Parking Co. of Am. Inc.*, 2007-Ohio-7138, ¶ 60 (10th Dist.), citing *Allied Erecting & Dismantling Co., Inc. v. Youngstown*, 2002-Ohio-5179, ¶ 64 (7th Dist.).

{¶ 66} "The amount of damages to be awarded in a breach of contract action is a factual issue; therefore, it is within the factfinder's province to determine the amount of damages to be awarded." *2454 Cleveland, LLC v. TWA, LLC*, 2020-Ohio-362, ¶ 16 (10th Dist.), citing *Mid Am. Constr., LLC v. Univ. of Akron*, 2019-Ohio-3863, ¶ 88 (10th Dist.). " '[A]ppellate courts review an award of damages in a bench trial under the manifest-weight-of-the-evidence standard.' " *Id.*, quoting *Mid Am. Constr., LLC* at ¶ 88. As such, we must determine whether some competent, credible evidence supports the award. *Id.*, citing *Alternatives Unlimited-Special, Inc. v. Ohio Dept. of Edn.*, 2013-Ohio-3890, ¶ 35 (10th Dist.).

{¶ 67} The trial court's April 17, 2024 decision overruled Cirotto's objection to the magistrate's decision and sustained in part and overruled in part Self Storage's objection to the magistrate's decision. Civ.R. 53(D)(4)(b) provides that, whether or not objections are timely filed, "a court may adopt or reject a magistrate's decision in whole or in part, with or without modification." If no timely objections to the magistrate's decision are filed, the trial court may adopt the magistrate's decision unless it determines "that there is an error of law or other defect evident on the face of the magistrate's decision." Civ.R. 53(D)(4)(c). If a party files timely objections to the magistrate's decision, the court must rule on the objections by "undertak[ing] an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law." Civ.R. 53(D)(4)(d). A trial court's review of a magistrate's decision is de novo. *Balalovski v. Tanevski*, 2021-Ohio-3990, ¶ 33 (10th Dist.), citing *Mackenbach v. Mackenbach*, 2012-Ohio-311, ¶ 9 (3d Dist.).

{¶ 68} " 'The standard of review on appeal from a trial court judgment that adopts a magistrate's decision varies with the nature of the issues that were (1) preserved for review through objections before the trial court and (2) raised on appeal by assignment of error.' " *McCarthy v. Johnson*, 2020-Ohio-3429, ¶ 10 (10th Dist.), quoting *In re Guardianship of Schwarzbach*, 2017-Ohio-7299, ¶ 14 (10th Dist.). An appellate court generally reviews a trial court's decision to adopt, reject, or modify a magistrate's decision for an abuse of discretion. *Id.*, citing *Lenior v. Ohio Dept. of Rehab. & Corr.*, 2020-Ohio-387, ¶ 10 (10th Dist.). An abuse of discretion occurs when a court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore*, 5 Ohio St.3d at 219; *Huffman*, 19 Ohio St.3d at 87.

{¶ 69} The trial court summarily overruled Cirotto's objection to the magistrate decision because his objection exceeded the page limitation stated in Loc.R. 12.01 of the Court of Common Pleas of Franklin County, General Division. The rule provides that "[a] supporting or opposing memorandum or brief . . . shall not exceed fifteen (15) pages exclusive of any supporting documents. Any supporting or opposing memorandum or brief which exceeds fifteen (15) pages shall not be considered without prior leave of the Court." Loc.R. 12.01. Cirotto's 20-page objection to the magistrate's decision exceeded the page limit stated in Loc.R. 12.01, and Cirotto did not seek leave to exceed the page limitation. The trial court noted it previously informed the parties in a July 8, 2022 scheduling order that motions exceeding the Loc.R. 12.01 page limitation " 'may be summarily denied or

disregarded.' " (Apr. 17, 2024 Decision & Jgmt. Entry at 3, quoting July 8, 2022 Am. Case Scheduling Order at 1, fn. 1.) Accordingly, we find the trial court did not err by summarily overruling Cirotto's objections based on his failure to comply with Loc.R. 12.01. *See Norris v. Basden*, 2024-Ohio-1019, ¶ 23 (10th Dist.).

{¶ 70} Self Storage's objection to the magistrate's decision asserted the magistrate's damages award was excessive. The trial court initially found no error in the magistrate's award of $7,500 for the loss of Cirotto's personal property in the storage unit. The court noted that, although the magistrate found Cirotto's testimony regarding the value of his property "not always credible," Self Storage submitted pictures depicting Cirotto's property in the storage unit. (Apr. 17, 2024 Decision & Jgmt. Entry at 4.) As such, the court found the magistrate was able to "use[] that photograph in conjunction with the testimony to determine what was actually present in the unit and see the state of that property at the time." (Apr. 17, 2024 Decision & Jgmt. Entry at 4.)

{¶ 71} Indeed, the magistrate noted Cirotto's List of Possessions "identified two bicycles" and the photographs Self Storage submitted "show[ed] two bicycles [in the storage unit] that could match [Cirotto's] description." (Nov. 20, 2023 Mag.'s Decision at 9.) However, the magistrate also noted Cirotto's list identified "two silk Ficus trees," but no trees were "clearly shown in the photographs." (Mag.'s Decision at 9.) Sigler affirmed the photographs depicted a "four foot by four foot top to a table" in the storage unit. (Nov. 13, 2023 Tr. at 95.) Cirotto's List of Possessions identified a "Designer Multi-Piece Kitchen Set Beautiful Table" valued at $3,000. (List of Possessions at 6.) Cirotto's List of Possessions also identified several items of clothes, shoes, and stereo equipment. At the damages hearing, Cirotto admitted the clothes and shoes were all between five to seventeen years old and that the stereo equipment was from "1989 to '98, '99." (Tr. at 54-58.) The magistrate concluded that, "[v]iewing the photographs; looking at the items that are in fact identified in [the List of Possessions]; [and] providing a discounted value for the items the Plaintiff established were in fact present in the storage unit;" an award of $7,500 for the personal property was appropriate. (Mag.'s Decision at 11.)

{¶ 72} As the trier of fact, the magistrate was entitled to believe all, part, or none of the testimony of any witness who appeared before it. *Kramer v. Kramer*, 2019-Ohio-4865, ¶ 28 (10th Dist.). Thus, the magistrate was entitled to use the photographs Self Storage submitted and parts of Cirotto's testimony to ascertain an appropriate value for the

property in the storage unit. Reviewing the record, we find the trial court did not abuse its discretion by overruling Self Storage's objection in part and adopting the magistrate's award of $7,500 for the loss of Cirotto's personal property. Additionally, we find the trial court did not abuse its discretion by adopting the magistrate's award of $525 for the three months of retained rental payments.

{¶ 73} The trial court sustained Self Storage's objection in part and rejected the magistrate's award of $5,000 for the loss of Cirotto's sentimental property. The court noted that, while the photograph "aided the magistrate in determining an actual value for the property in the storage unit," the only evidence addressing the value of Cirotto's sentimental property was Cirotto's testimony and his List of Possessions which were "not credible." (Apr. 17, 2024 Decision & Jgmt. Entry at 4.) The magistrate noted the value of the sentimental property items on Cirotto's List of Possessions exceeded $4,000,000. The magistrate found Cirotto's valuation of his sentimental property "beyond the bounds of reason" and "biased and untrustworthy." (Nov. 20, 2023 Mag.'s Decision at 11.) As such, the magistrate found Cirotto "was not able to establish any real economic value to his sentimental items." (Mag.'s Decision at 4.)

{¶ 74} "Although 'a trial court is required to independently review the record and make its own factual and legal findings, the trial court may rely upon the magistrate's credibility determinations when it reviews the magistrate's decision.' " *Balalovski*, 2021-Ohio-3990, at ¶ 33 (10th Dist.), quoting *Mackenbach*, 2012-Ohio-311, at ¶ 9 (3d Dist.). Accordingly, the trial court was entitled to rely on the magistrate's determination that Cirotto's evidence regarding the value of his sentimental property lacked credibility. Because Cirotto failed to present any credible evidence addressing the value of his sentimental property, the trial court appropriately sustained Self Storage's objection in part and rejected the magistrate's award of $5,000 for the sentimental property. *See Natl. Contracting Group, Ltd. v. P&S Hotel Group, Ltd.*, 2021-Ohio-2940, ¶ 27 (10th Dist.) (noting that, while this court did not "doubt that Mohawk Carpet received compensation in order to release the mechanic's lien, we agree[d] with the trial court that Shah's testimony [was] inadequate evidence of the amount that P&S paid," and therefore found given the "inexactitude" of the testimony there was no credible evidence to support an award of damages).

{¶ 75} Based on the foregoing, we overrule Cirotto's third assignment of error.

## VI. Conclusion

{¶ 76} Having sustained in part and overruled in part Cirotto's first assignment of error and having overruled Cirotto's second and third assignments of error, we affirm the April 17, 2024 decision and entry of the Franklin County Court of Common Pleas and affirm in part and reverse in part the court's March 9, 2023 decision and entry. We remand the case to that court for proceedings consistent with this decision.

*April 17, 2024 judgment affirmed;*
*March 9, 2023 judgment affirmed in part and reversed in part;*
*cause remanded.*

JAMISON, P.J., and EDELSTEIN, J., concur.

_____